# Commonwealth *vs.* Jacob M. Liptak.

No. 09-P-372.

Hampshire. December 8, 2010. - August 11, 2011.

Present: Cohen, Graham, & Wolohojian, JJ.

*Motor Vehicle,* Homicide, Operating under the influence. *Practice, Criminal,* Motion to suppress, Admissions and confessions, Voluntariness of statement, Waiver, New trial, Assistance of counsel, Comment by prosecutor. *Evidence,* Admissions and confessions, Voluntariness of statement, Photograph.

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress statements made to an emergency medical technician and to a police officer following a motor vehicle collision, where the record supported the judge's conclusion that the defendant made his statements voluntarily, despite his anxiety, physical trauma, and consumption of alcohol and pain medication; likewise, no error arose in the judge's conclusion that the defendant's waiver of his Miranda rights was made knowingly, intelligently, and voluntarily. [80-82]

At the trial of an indictment charging manslaughter by motor vehicle while operating under the influence of alcohol, the judge did not abuse his discretion in admitting photographs depicting the damage to the victim's car and the extensive injuries to the victim, where the photographs were probative of the point that the defendant's conduct was wanton and reckless; and where the photographs, although disturbing, were not unduly prejudicial, and the judge took steps to mitigate any potential prejudice. [82-84]

A Superior Court judge did not abuse his discretion in denying the criminal defendant's motion for a new trial, where defense counsel was not ineffective in failing to request an instruction regarding statements the defendant made during an unrecorded interview with a police officer while he was being treated at a hospital, in that the questioning did not constitute a custodial interrogation and the defendant therefore was not entitled to such an instruction. [84-86]

A Superior Court judge did not abuse his discretion in denying the criminal defendant's motion for a new trial, where no substantial risk of a miscarriage of justice arose from two improper comments made by the prosecutor in closing argument. [86-89]

Indictment found and returned in the Superior Court Department on January 10, 2006.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford*, J.; the case was tried before *Judd J. Carhart*, J., and a motion for a new trial, filed on May 28, 2009, was heard by him.

*Carlene A. Pennell* for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

GRAHAM, J. The defendant, Jacob M. Liptak, was convicted by a Superior Court jury of manslaughter by motor vehicle while operating under the influence of alcohol, G. L. c. 265, § 13 ½. The defendant filed a timely appeal from his conviction, and this court stayed the appellate process pending the resolution of his motion for a new trial and motion for a stay of sentence. After a nonevidentiary hearing, the motion for a new trial was denied by the trial judge. Represented by new counsel, the defendant appeals from his conviction and from the order of the trial judge denying his motion for a new trial.

On appeal the defendant argues error in the denial of his motion to suppress, in the admission in evidence of graphic photographs of the accident scene and the victim's injuries, and in the prosecutor's closing argument. In addition, he asserts that his trial counsel provided ineffective assistance. We affirm the defendant's conviction and the order denying the motion for a new trial.

1. *Facts.* The facts from the trial are recited in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On the evening of December 17, 2005, the defendant and his then girlfriend, Samantha Serre,[1] were driving home from a party when the defendant caused a three-car collision. The defendant's pickup truck was traveling approximately fifty to sixty miles per hour when it crossed the center line of the road and struck the left front corner of the victim's car, then rotated counterclockwise and collided with a second car traveling behind the victim's car. The victim suffered fatal injuries at the scene of the collision.

The left front and driver's side of defendant's truck was

---

[1]The defendant and Serre married in February, 2006. We refer to her by her name at the time of the collision to avoid confusion.

severely damaged. Inside the truck, officers found a full beer bottle and an empty beer bottle, as well as a pair of women's shoes on the floor of the passenger side. Officer Corey Robinson of the Northampton police department arrived on the scene and observed Serre, who had suffered only minor injuries, sitting on the ground next to the front passenger side tire of the defendant's vehicle, without shoes.

Deoxyribonucleic acid (DNA) testing conducted by the Massachusetts State Police crime laboratory concluded that reddishbrown stains found above the glove compartment and the passenger door matched the DNA profile of the defendant, but not that of Serre. DNA recovered from the driver's side airbag, which had deployed during the collision, contained a mixture of at least two individuals, and the defendant matched the major DNA profile. According to the Commonwealth's biomechanics expert witness, the driver of a car involved in a frontal offset collision, such as this one, would suffer low extremity trauma to the foot and ankle. Where the driver's side airbag has deployed, the driver of the vehicle would sustain injuries of greater severity than those sustained by an unrestrained passenger, who may not experience a greater likelihood of head or facial injuries.

In addition to these facts, there was evidence of inculpatory statements made by the defendant to the police at the scene and at the hospital. This evidence had been the subject of the defendant's unsuccessful motion to suppress; its substance is recounted below.

2. *Motion to suppress.* We summarize the underlying facts as found by the motion judge. On the evening of December 17, 2005, at approximately 11:20 P.M., Officer Robinson was dispatched to the scene of a collision involving three motor vehicles. Emergency medical technician (EMT) Jason Budlong arrived and observed the defendant, who was unconscious, partially hanging out of the front passenger side window of his vehicle. The defendant's right leg was severely injured and he was bleeding from a head injury.

After Robinson and Budlong moved the defendant from the vehicle onto a stretcher, the defendant regained consciousness and appeared alert enough to be questioned. In response to Robinson's questions, the defendant stated his name, that he

had been driving the vehicle, and that he had consumed "[o]ne or two" drinks. The defendant responded to Robinson without hesitation or apparent difficulty. Both Robinson and Budlong believed the defendant to be alert and oriented as to person, place, and time.

After Budlong loaded the defendant in an ambulance, the defendant stated, "I'm never going to drink again." In response to Budlong's questions, he again affirmed that he had been drinking that night and that he had been the driver of the vehicle. The defendant also apologized to Serre, also present in the ambulance, and would pause in his conversation with her to answer Budlong's questions. Although Budlong noticed a strong odor of alcohol from the defendant's breath and determined that the defendant could not clearly recall the circumstances of the collision, the defendant did not appear to have difficulty responding to Budlong, nor did he exhibit signs of a concussion.

The defendant was transported to Bay State Medical Center, where, at approximately 12:30 A.M., he was administered morphine and, at about 1:00 A.M., oxycodone, for pain. Hospital personnel then conducted an assessment and determined that the defendant was alert and oriented as to person, place, and time. The hospital records indicate that his serum blood-alcohol level was 218, equivalent to a whole blood alcohol level of 0.19 parts per million. It was later determined that the defendant had suffered fractures of his right tibia and fibula, a concussion, and lacerations to his head and face.

Officer Robinson arrived at the hospital at approximately 2:30 A.M. to interview the defendant. The defendant's face appeared swollen and he was wearing a neck collar. Robinson also noted that the defendant's eyes were bloodshot. The defendant accurately stated his date of birth and social security number and responded to Robinson's questions without hesitation. Robinson gave the defendant his warnings, see *Miranda* v. *Arizonza*, 384 U.S. 436 (1966), and informed him that he was not going to be arrested that night. The defendant indicated that he understood his Miranda rights. In response to Robinson's questions, the defendant affirmed that he had been driving the vehicle home from a party and that he had consumed two beers over the course of the evening. The defendant's mother, who worked as a nurse

at another hospital, was present during the interview and asked Robinson if the defendant should get a lawyer, to which Robinson replied that he was unable to give any legal advice.

The defendant claims that his statements made to EMT Budlong and Officer Robinson should have been suppressed because they were made involuntarily. Reviewing the denial of the defendant's motion to suppress, we accept the judge's resolution of conflicting testimony and his findings absent clear error and give substantial deference to his conclusions. *Commonwealth* v. *Fernette*, 398 Mass. 658, 662-663 (1986). *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 364 (1997). However, we "make an independent determination of the correctness of the judge's application of constitutional principals to the facts as found." *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

To make a determination of voluntariness, we consider whether, under "the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." *Commonwealth* v. *Selby*, 420 Mass. 656, 662-663 (1995). Under this standard, relevant circumstances include, inter alia, the "conduct of the defendant, the defendant's age, education, intelligence and emotional stability, . . . physical and mental condition, . . . and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986).

The first of the contested statements was made by the defendant in the immediate aftermath of the collision, and other contested statements were made several hours later at the hospital. At the accident scene, the defendant had suffered a concussion, which rendered him unconscious for a short period of time, and a broken leg, resulting in substantial pain, and he was anxious and apologetic in his conversations with Serre. He had also consumed alcohol prior to the collision and was later given pain medication at the hospital. The defendant argues that the effects of the combination of injury, alcohol, emotional distress, and prescription medication rendered his statements, both at the accident scene and in the hospital, involuntary.

Although a defendant's intoxication bears on whether his

statements are voluntary, see *Commonwealth* v. *Taylor*, 398 Mass. 725, 728-729 (1986); *Commonwealth* v. *Prater*, 420 Mass. 569, 579 (1995), it does not necessarily mandate a finding of involuntariness. *Commonwealth* v. *St. Peter*, 48 Mass. App. Ct. 517, 521-522 (2000), quoting from *Commonwealth* v. *Smith*, 426 Mass. 76, 82 (1997). See *Commonwealth* v. *Ward*, 426 Mass. 290, 294 (1997). The motion judge found, and the findings are supported by the record from the motion hearing, that the evidence of the defendant's intoxication notwithstanding, the defendant was alert, coherent, and understood the questions posed to him. Two experienced emergency personnel concluded that the defendant spoke cogently, answered questions promptly, and was able to carry on a conversation with Serre while pausing to respond to Budlong. An assessment carried out by hospital personnel after the administration of pain medication established that the defendant was oriented to person, place, and time. See, e.g., *Commonwealth* v. *Doucette*, 391 Mass. 443, 448, 449-450 (1984) (waiver of Miranda rights found valid and confession voluntary where, despite evidence of prior consumption of alcohol, other evidence found credible by judge showed that at time of waiver and of confession defendant was not overcome by intoxication).

The motion judge's findings also explicitly address the defendant's emotional and physical condition. The record supports the judge's conclusion that, although the defendant may have been anxious or "not himself," as his mother testified at the hearing, and was suffering from traumatic and painful injuries, he nevertheless made his statements voluntarily. Compare *Commonwealth* v. *Hosey*, 368 Mass. 571, 573-579 (1975) (defendant's waiver of constitutional rights not voluntary where defendant was "extremely emotional," "wasn't making much sense," and seemed "detached from reality" during interrogation). Though defendant did, in fact, suffer a concussion that rendered him briefly unconscious, Budlong detected no signs of a concussion when he examined the defendant at the scene. The defendant's statements to Robinson that he consumed only "[o]ne or two beers" demonstrate that he retained the presence of mind during the interview to minimize his alcohol consumption. Despite the defendant's anxiety, physical trauma, and consumption of

alcohol and pain medication, we discern no error in the motion judge's conclusion that the statements were voluntarily made.

The defendant argues further that the waiver of his Miranda rights was also not voluntary, see *Commonwealth* v. *Day*, 387 Mass. 915, 920-921 (1983); *Commonwealth* v. *Selby*, 420 Mass. at 660, though he does not challenge the motion judge's conclusion that the defendant's right to counsel was not violated. We note first that Robinson's interview with the defendant in the hospital was not a custodial interrogation, and there was no requirement that the defendant be given Miranda warnings.[2] Though the defendant had consumed alcohol and had been given pain medication, we find no error in the motion judge's conclusion that the defendant's waiver of his Miranda rights was made knowingly, intelligently, and voluntarily for the reasons stated above. See *Commonwealth* v. *Shipps*, 399 Mass. 820, 826 (1987).[3]

3. *Photographs.* The defendant argues that the trial judge abused his discretion by admitting in evidence three photographs depicting the damage to the victim's car and the extensive injuries to the victim. Specifically, the defendant claims that the photographs, which show the victim's car from three different angles and the crushed frame of the automobile around the victim's body, were highly inflammatory in their depiction of the "decapitated victim crushed inside her car," and were of little or no probative value.

The defendant objected to the admission of the photographs, and we therefore review to determine whether their admission was in error and, if so, whether "the error did not influence the jury, or had but very slight effect . . . ." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). "The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." *Commonwealth* v. *Winfield*, 76 Mass. App. Ct. 716, 725 (2010), quoting from *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987).

---

[2]See discussion in part 4, *infra.*

[3]Additionally, the failure to record the interview does not compel a finding that the statements made therein were involuntary. See *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 441, 445, 448-449 (2004).

"[I]f the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome [or duplicative] or may have an inflammatory effect on the jury.'" *Commonwealth* v. *Benson*, 419 Mass. 114, 118 (1994), quoting from *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990). See Mass. G. Evid. § 403 (2011). A party may not preclude the admission of relevant photographs by agreeing to stipulate to the fact that the offered evidence tends to prove. See *Commonwealth* v. *Nadworny*, 396 Mass. 342, 367 (1985), cert. denied, 477 U.S. 904 (1986). That a photograph is cumulative of other evidence does not require its exclusion. *Commonwealth* v. *DeSouza*, 428 Mass. 667, 670 (1999).

We disagree with the defendant's contention that the photographs lacked probative value. The photographs depicted the victim's car from three different angles and illustrated the damage to the vehicle's frame as a result of the collision. In only one photo was the victim's face visible; in the photo identified as exhibit 12, most of the victim's body was obscured by an emergency tarp. The Commonwealth had the burden to prove that the defendant's conduct was wanton and reckless, see, e.g., *Commonwealth* v. *Doyle*, 73 Mass. App. Ct. 304, 307 (2008),[4] and was entitled to present visual evidence of the damage to the vehicles and injuries to the victim to support its theory of how the collision occurred and the forces acting on the bodies of the victim, the defendant, and Serre.[5] See *Commonwealth* v. *Keohane*, 444 Mass. 563, 573 (2005) (Commonwealth entitled to present photographs of victim to jury in support of its theory of how murder occurred). That the photographs tended to show evidence similar to that presented in other forms does not render them irrelevant or necessarily inadmissible.

We also reject the defendant's contention that the photographs,

---

[4]The defendant stipulated that the accident occurred on a public way and that the injuries sustained by the victim caused her death.

[5]The trial judge noted, in response to defense counsel: "At the beginning of the trial you wanted me to not let anything in, just have them describe through engineers what happened. But I'm not going to do that. I think they are entitled to use their real life experience in determining several factors. One is the degree of impact as it relates to the charges here. So that can go in. I'm struggling with these three, though. I'm going to allow this in, in that it shows the wound to the chest, and that would also have some probative value as to the impact."

though disturbing, were unduly prejudicial. The trial judge was sensitive to the grisly nature of the photographs, excluding several images depicting the injuries to the victim and a photograph from the autopsy, see *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980) (autopsy photographs are considered to pose "special problems"), and requiring that one photograph be sanitized so as not to depict the victim's brain matter. The judge also took steps to mitigate any potential prejudice. Prior to the publication of the photographs to the jury, the judge instructed the jury that the photographs were presented only to help them understand the case and warned them not to allow the images "to appeal to [their] emotions or to inflame [their] sensibilities." He instructed them further, "You must not let your emotions govern your view of these photographs. . . . Difficult as it may be, you must set your emotions aside." See *Commonwealth* v. *Richenburg*, 401 Mass. 663, 673 (1988). There was no abuse of the trial judge's considerable discretion in admitting the photographs.

4. *Ineffective assistance of counsel claim.* In his motion for a new trial, the defendant claimed that his trial counsel provided ineffective assistance in failing to request an instruction pursuant to *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-448 (2004), regarding the statements made by the defendant at the hospital, following the collision, during the interview with Officer Robinson, which was not recorded.[6] "The decision to grant a motion for a new trial rests soundly within the judge's discretion and 'will not be reversed unless it is manifestly unjust or . . . the trial was infected with prejudicial constitutional error.' *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999). Moreover, we give 'special deference to the decisions of a

---

[6]"[W]hen the prosecution introduces evidence of a defendant's confession or statement that is the product of a custodial interrogation or an interrogation conducted at a place of detention (e.g., a police station), and there is not at least an audiotape recording of the complete interrogation, the defendant is entitled (on request) to a jury instruction advising that the State's highest court has expressed a preference that such interrogations be recorded whenever practicable . . . ." *Commonwealth* v. *DiGiambattista*, 442 Mass. at 447. "Where voluntariness is a live issue and the humane practice instruction is given, the jury should also be advised that the absence of a recording permits (but does not compel) them to conclude that the Commonwealth has failed to prove voluntariness beyond a reasonable doubt." *Id.* at 448.

judge who was, as here, the trial judge.' *Commonwealth* v. *Murphy*, 442 Mass. 485, 499 (2004)." *Commonwealth* v. *Espada*, 450 Mass. 687, 697 (2008). The burden of establishing the grounds for a new trial rests on the defendant. *Commonwealth* v. *Comita*, 441 Mass. 86, 93 (2004). Where, as here, a motion for a new trial is based on allegedly ineffective assistance of counsel, we apply the familiar standard set out in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant was not entitled to a *DiGiambattista* instruction because the statements at issue were not made while the defendant was in custody. "A person is in custody whenever he is 'deprived of his freedom of action in any significant way.' " *Commonwealth* v. *Groome*, 435 Mass. 201, 211 (2002), quoting from *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977). "The critical question in making the custody determination is 'whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in custody.' " *Commonwealth* v. *Sneed*, 440 Mass. 216, 220 (2003), quoting from *Commonwealth* v. *Brum*, 438 Mass. 103, 111 (2002).

When assessing the circumstances, we look to several factors: "(1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that the person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest." *Commonwealth* v. *Groome*, 435 Mass. at 211-212. See *Commonwealth* v. *Morse*, 427 Mass. 117, 121-127 (1998).

Applying these factors to Officer Robinson's interview with the defendant, we conclude that the questioning did not amount to a custodial interrogation. At the beginning of the approximately ten-minute interview, Robinson informed the defendant that he

was not going to be arrested that night.[7] See *Commonwealth* v. *Bryant*, 390 Mass. 729, 742 n.15 (1984) (noting that nonarrest of suspect at end of questioning often deemed indicative of lack of custodial atmosphere). Moreover, Robinson's inquiries were primarily investigative, and there was no evidence that the questioning was aggressive. See, e.g., *Commonwealth* v. *O'Brien*, 432 Mass. 578, 586 (2000); *Commonwealth* v. *Doyle*, 12 Mass. App. Ct. 786, 793-794 (1981). Because of the defendant's injuries, he was confined to a hospital bed, but his responses to Robinson were coherent and made without hesitation, and despite his having ingested both alcohol and pain medication, nothing in the record indicates that he lacked the physical or mental capacity to participate willingly in the interview or to end it.[8]

In sum, the interview was not a custodial interrogation; the defendant was not entitled to a *DiGiambattista* instruction based on Robinson's failure to record the interview, see *Commonwealth* v. *Jones*, 75 Mass. App. Ct. 38, 45-46 (2009); and, therefore, trial counsel was not deficient in failing to make such a request.

5. *Prosecutor's remarks.* The defendant claims another error in the denial of his motion for a new trial, arguing that two comments made by the prosecutor during closing argument warrant a new trial due to their highly prejudicial nature. Defense counsel did not preserve the claim of error; therefore, we consider only whether the error, if any, created "a substantial risk of a miscarriage of justice." *Commonwealth* v. *LeFave*, 430 Mass. 169, 173-174 (1999). See *Commonwealth* v. *Beaz*, 69 Mass. App. Ct. 500, 505 (2007). While we agree that the comments were improper, the defendant has not met his burden here.

The prosecutor stated during closing, "[The defendant] continued to go on and make these statements, 'I love you,

---

[7]Robinson also read the defendant his Miranda rights. We reject the defendant's contention that such an action indicates a custodial atmosphere or that Robinson considered the defendant to be a suspect in a crime. It is well-settled that Miranda warnings are required when a person in custody is subjected to express questioning or its functional equivalent, but not all questioning requires the warnings. *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980). *Commonwealth* v. *Sheriff*, 425 Mass. 186, 197 (1997). Apprising an individual of her Miranda rights does not necessarily indicate that the exchange is a custodial interrogation.

[8]See part 2, *supra.*

Samantha. . . . I'll marry you' — which he did. That's because at the time he knew he was driving drunk and at the time he . . . knew that she was the only other person that was involved." The comment was improper because it could be understood to imply that Liptak married Serre in an attempt to keep her from testifying against him.[9] See *Commonwealth* v. *Szerlong*, 457 Mass. 858, 869 (2010) cert. denied, 131 S.Ct. 1494 (2011) ("Because the spousal privilege belongs to the witness spouse, not the defendant spouse, and because the defendant cannot compel the spouse's testimony, no inference is appropriate from the failure of a spouse to testify"). As the Commonwealth acknowledges, the defendant had no knowledge when making the statement that he would face criminal charges, and nothing else in the record supports the inference that his comments were motivated by self-interest or were otherwise insincere. See *Commonwealth* v. *Coren*, 437 Mass. 723, 730 (2002) ("Prosecutors must limit the scope of their arguments to facts in evidence and inferences that may be reasonably drawn from the evidence").

We consider comments made during closing arguments "in the context of the entire argument, the testimony, and the judge's instructions to the jury." *Commonwealth* v. *Hrabak*, 440 Mass. 650, 654 (2004), and cases cited. When evaluating the consequences of prosecutorial error, we look to several factors, including whether the error was limited to collateral issues or touched the heart of the case, whether the judge's instructions to the jury may have mitigated the error, and whether the error could have made a difference in the jury's conclusions. *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987). Though the comment was relevant to the jury's assessment of the evidence of the identity of the driver, it was of minimal importance, given the implausibility of the inference and the overwhelming evidence presented allowing the jury to conclude that the defendant was the driver. Further, the trial judge gave clear instructions to the jury that closing arguments did not constitute evidence. Nor was this an instance in which prosecutorial error required an instruction tailored to the specific misstatement.

[9]Prior to trial, Serre asserted her marital privilege, and the court excused her from testifying.

Compare *Commonwealth* v. *Hrabak*, 440 Mass. at 657 (standard jury instruction insufficient to cure error when prosecutor invited jury to draw an inference that could not be drawn in the absence of expert testimony and judge failed to give requested jury instruction).

The defendant also contends that he was prejudiced by the prosecutor's comments regarding the defendant's mother's questions about his potential need for counsel. The defendant's mother was present during Officer Robinson's interview with the defendant at the hospital and inquired whether the defendant should retain an attorney. During closing argument, the prosecutor asked, "And why would [the defendant's mother] ask Officer Robinson a question about whether or not her son needs a lawyer if he wasn't driving?"

The prosecutor's comment invited the jury to infer that his mother believed him to be criminally responsible for the collision and that, consequently, he needed a lawyer. Such a comment is clearly improper. The decision to consult an attorney is not indicative of guilt or innocence, and "a prosecutor may not 'imply that only guilty people contact their attorneys.' " *Commonwealth* v. *Nolin*, 448 Mass. 207, 222 (2007), quoting from *Commonwealth* v. *Person*, 400 Mass. 136, 141 (1987). We reject the Commonwealth's contention that the prosecutor's remark was merely a challenge to the credibility of the defendant's mother. That argument rests on the very same improper premise linking the defendant's guilt with his need for an attorney.[10]

However, the defendant has not demonstrated that the error created "serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002), quoting from *Commonwealth* v. *LeFave*, 430 Mass. at 174. The physical and testimonial evidence indicating that the defendant was the driver was substantial. The trial judge gave careful instructions on the role of the jury and indicated that closing arguments are not evidence,

---

[10]We further note that the Commonwealth made improper substantive use of the defendant's mother's statement, which had been admitted only for its bearing on the issue of voluntariness. See *Commonwealth* v. *Rosa*, 412 Mass. 147, 156 (1992).

and defense counsel failed to object to the comment at trial. See *Commonwealth* v. *Payne*, 426 Mass. 692, 697 (1998).[11]

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[11]In the preceding sections, we identified as error only the prosecutor's comments during closing argument. But as we concluded that the comments did not result in a substantial risk of a miscarriage of justice, the defendant's claim of cumulative error is without merit.