## COMMONWEALTH *vs.* RONNIE R. BIGLEY.

No. 13-P-539.

Plymouth. April 7, 2014. - June 24, 2014.

Present: KANTROWITZ, AGNES, & HINES, JJ.

*Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Motion to suppress, Findings by judge, Waiver, Voluntariness of statement, Confrontation of witnesses. *Constitutional Law,* Waiver of constitutional rights, Voluntariness of statement, Confrontation of witnesses. *Evidence,* Voluntariness of statement, Business record, Intoxication. *Intoxication. Waiver.*

This court concluded that, although a District Court judge, in deciding a pretrial motion to suppress statements made by the criminal defendant to police officers and an arson investigator, failed to make subsidiary findings of fact, the facts necessary to decide the legal questions involved appeared with sufficient clarity to permit review by this court without the need to remand the case for preparation of findings of fact. [511-512]

A District Court judge properly denied a pretrial motion to suppress statements made by the criminal defendant to police officers and an arson investigator, where, although the defendant was intoxicated, sufficient evidence supported the judge's conclusion that there was a valid waiver of the Miranda rights, in that the evidence demonstrated that the police advised the defendant of his Miranda rights on several occasions before he was questioned, that he said he understood them, that he answered the questions in a cooperative manner and without hesitation, that he had no difficulty in making decisions when asked to take certain tests and file certain forms, and that the police did nothing to coerce or intimidate him into speaking. [512-515]

At the jury-waived trial of a criminal complaint charging, inter alia, operating a motor vehicle while under the influence of alcohol, fourth offense, in violation of G. L. c. 90, § 24(1)(*a*)(1), the judge did not err in admitting in evidence the defendant's records from the Registry of Motor Vehicles and the Board of Probation, where such records were kept in the ordinary course of business [515-516]; further, based on the defendant's identifying information contained in court dockets and these records, there was sufficient evidence from which the judge could conclude that the defendant had previously been convicted of three offenses of operating a motor vehicle while under the influence of alcohol [516-517].

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on September 27, 2010.

A pretrial motion to suppress evidence was heard by *Mary L. Amrhein*, J., and the case was tried before *Paul J. McCallum*, J.

*Maurice A. Reidy, III*, for the defendant.

*Stacey L. Gauthier*, Assistant District Attorney, for the Commonwealth.

AGNES, J. The defendant, Ronnie R. Bigley, after a trial by jury, was found guilty of operating a motor vehicle while under the influence of alcohol (OUI) and, following a second, jury-waived trial pursuant to G. L. c. 278, § 11A, was found guilty on the second or subsequent offense portion of the complaint charging that he was a fourth offender in violation of G. L. c. 90, § 24(1)(*a*)(1). The defendant also was convicted on a count charging him with burning a motor vehicle, in violation of G. L. c. 266, § 5. The principal issue on appeal is the admissibility of statements made by the defendant to Bridgewater police officers and a Bridgewater fire department arson investigator. The defendant maintains that he was so intoxicated and highly emotional that he was incapable of waiving his Miranda rights as a matter of law based on the reasoning in *Commonwealth* v. *Hosey*, 368 Mass. 571 (1975) (*Hosey*), and that the judge erred in not suppressing his statements. As we explain below, this argument is based on a misreading of *Hosey*. Regrettably, the judge did not make subsidiary findings of fact. However, the facts necessary to decide the legal questions involved appear with sufficient clarity to permit review without the need to remand the case for preparation of findings of fact. Accordingly, we affirm.

*Background.* These facts are drawn from the testimony of Bridgewater police Officers Silvia and Gray, and Bridgewater fire department Deputy Chief Levy, the three witnesses who testified at the hearing on the pretrial motion to suppress.[1] In the early morning hours of September 26, 2010, Officer Silvia

---

[1] At oral argument, the defendant's counsel informed the court that we should assume that the facts are consistent with the testimony of the two police officers and the arson investigator who testified at the hearing on the defendant's pretrial motion to suppress. The defendant did not testify at this hearing. When asked if he would prefer a remand to permit the judge to make findings of fact, defense counsel did not deem it necessary. As we explain in the text, *infra*, ultimately, whether a remand is required depends on the adequacy of the record, not the preferences of the parties. See *Commonwealth* v. *Gaulden*, 383 Mass. 543, 547 (1981).

and Sergeant Griffiths, veteran officers of the Bridgewater police department, arrived at the intersection of Crapo and Oak Streets, where a motorcycle, lying on its side, was in flames. The officers checked the motorcycle's license plate number and determined that it belonged to the defendant.

About one-quarter mile away on Oak Street, Officer Gray observed a pedestrian who was "unsteady on his feet," with glassy, bloodshot eyes, who was walking against the traffic and "side to side as if to be losing his balance." Officer Gray stopped the pedestrian, who seemed "very agitated." The pedestrian identified himself as Ronnie Bigley. Officer Gray detected a "strong odor of alcohol" on the defendant's breath. Officer Gray advised the defendant of the Miranda rights almost immediately after stopping him. The defendant said he understood his rights. When asked where he was coming from, he replied, "[T]he Toby Keith concert." Officer Gray contacted Officer Silvia, who was familiar with the defendant, to confirm the pedestrian's identity. Officer Silvia arrived shortly after Officer Gray encountered the defendant. Officer Gray then verbally gave the defendant the Miranda warnings. The defendant told the officers he understood his rights.

Officer Silvia noted that the defendant was "very emotional." When questioned, he kept repeating: "I'm fucked, my marriage is over, there goes my kid, I'll be going away for the next three to five years." However, the defendant gave a coherent account of his activities earlier that evening and morning. He told the police he had been at the Toby Keith concert, and subsequently had gone to the Riviera Café in Bridgewater, which is about one hundred yards from the accident scene. The defendant also told the police he had driven his motorcycle from the concert to the Riviera Café. At this point, the defendant became very agitated. Officer Gray handcuffed the defendant while Officer Silvia frisked him and placed him in the police cruiser. The defendant was then transported to the police station for booking.

At the station, the defendant was again advised of his Miranda rights. Officer Silvia read the Miranda warnings from a printed form. He observed the defendant, who also appeared to read the form and then signed it. When asked if he wished to continue to speak with the police, the defendant responded, "[Y]es." He

declined the invitation to perform field sobriety tests and to take a Breathalyzer test. About one hour after the defendant's arrival at the station, Deputy Chief Levy, an arson specialist who had been to the scene of the motorcycle fire, spoke with the defendant. Levy told the defendant that it was his job to determine the cause of the fire. He told the defendant that he needed information about the ownership of the motorcycle and how it came to be in the location where it was found. Deputy Chief Levy found the defendant to be cooperative, and noted that the defendant did not refuse to answer any of his questions. When the option of filing a stolen vehicle report was explained to him, the defendant stated that he did not want to file such a report.

When asked about his activities earlier that evening, the defendant stated that following the Toby Keith concert, he stopped at a 7-Eleven store in Easton, and then headed towards a restaurant or a bar named the Riviera Café on Crapo Street in Bridgewater. He said he got there around 11:00 P.M. and left at closing, which is 1:00 A.M. The defendant told Deputy Chief Levy that, at last call, he had a few drinks. He went outside to have a cigarette, and an individual that he identified as his uncle, but whose name he did not know, told him that he should not ride home and pushed him. And the defendant concluded by saying that his uncle left on the motorcycle.

Defense counsel filed a pretrial motion to suppress the defendant's statements, contending that the defendant's intoxication and emotional condition required a ruling that the Commonwealth had failed to sustain its burden of proving a waiver of his Miranda rights. The motion judge, after a hearing, denied the motion, concluding that "Miranda [w]arnings were properly given and waived" and that "[a]ll statements made by the defendant were made voluntarily and are admissible."[2] She made no subsidiary findings of fact to support these rulings.

---

[2]Based on the evidence presented at the hearing on the pretrial motion to suppress, the judge acted wisely in anticipating that voluntariness could be a live issue at trial, and in ruling on the question even though this issue was not raised by the defendant's pretrial motion. See *Commonwealth* v. *Stroyny*, 435 Mass. 635, 647 (2002); *Commonwealth* v. *Kirwin*, 448 Mass. 304, 318 (2007). There was an adequate evidentiary basis for the judge's conclusion that the defendant's initial statements, as well as those made after his arrest and while at the police station, were voluntary. In the absence of police coercion or

*Discussion.* 1. *Motion to suppress statements.* a. *Judge's failure to make subsidiary findings of fact.* The judge should have made subsidiary findings to support her ultimate conclusions. "The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court." *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). Because only the trial judge can assess credibility, see *Commonwealth* v. *Santo*, 375 Mass. 299, 303 (1978), in certain circumstances the absence of subsidiary findings of fact will necessitate a remand of the case for findings to be made or for a new hearing. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 338 (2007), *S.C.*, 450 Mass. 818 (2008); *Commonwealth* v. *Comolli*, 14 Mass. App. Ct. 607, 613-614 (1982); *Commonwealth* v. *Green*, 27 Mass. App. Ct. 762, 771 (1989), *S.C.*, 408 Mass. 48 (1990). The present case falls into that category of cases in which there is no evidence of police coercion or intimidation, and no conflicts in the testimony that require the judge to resolve credibility issues. As the Supreme Judicial Court noted in *Commonwealth* v. *Brady*, 380 Mass. 44 (1980):

"Although we have stated that it is both prudent and desirable for a judge to make a record of facts found in a voir

intimidation, the fact that the defendant was intoxicated and emotionally upset does not preclude a finding that his statements were voluntary. See *Commonwealth* v. *Doucette*, 391 Mass. 443, 448 (1984); *Commonwealth* v. *Cutts*, 444 Mass. 821, 832-833 (2005). See also *Commonwealth* v. *Paszko*, 391 Mass. 164, 172-178 (1984) (statement made while defendant undergoing drug withdrawal held voluntary); *Commonwealth* v. *McCauley*, 391 Mass. 697, 700-702 (1984), cert. denied, 534 U.S. 1132 (2002) (statements held admissible although defendant had testified that from time of crime to time of arrest, "he had not slept and had ingested alcohol, heroin, Valium, cocaine and methadone"); *Commonwealth* v. *Allen*, 395 Mass. 448, 457-458 (1985) (defendant's statements voluntary although he was recovering from self-inflicted gunshot wound to brain). Here, the judge's ruling implies that she credited the testimony of the Commonwealth's witnesses. See *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586 n.2 (1984). The test is not whether it was in the defendant's interest to speak or whether the defendant would have made the statements had he been sober, but whether the decision to speak was a choice made by the defendant. See *Commonwealth* v. *Doyle*, 12 Mass. App. Ct. 786, 796 (1981). Finally, we note that the trial judge complied with our "humane practice" and submitted the question of voluntariness to the jury, with proper instructions, for their independent determination. See *Commonwealth* v. *Blanchette*, 409 Mass. 99, 106 (1991).

dire hearing on the admissibility of evidence, we have not held that unmistakable clarity mandates an absolute requirement that such a record be made. Failure to make explicit findings does not in and of itself constitute reversible error. Where, as in the present case, the evidence presented at the voir dire is not conflicting and does not raise any question of custodial coercion, the judge's decision to admit the defendant's statements makes his conclusions as to voluntariness clearly evident from the record. We emphasize, however, that we in no way condone the judge's failure to make findings."

*Id.* at 52 (quotations and citations omitted). See *Commonwealth* v. *Parham*, 390 Mass. 833, 837 (1984) (*Parham*); *Commonwealth* v. *Foley*, 445 Mass. 1001, 1002-1003 (2005), cert. denied, 548 U.S. 927 (2006); *Commonwealth* v. *Hoyt*, 461 Mass. 143, 147 n.5 (2011); *Commonwealth* v. *Deloney*, 59 Mass. App. Ct. 47, 60 (2003). Here, "the judge's denial of the defendant's motion implies the resolution of factual issues in favor of the Commonwealth." *Commonwealth* v. *Lanoue*, 392 Mass. 583, 587 n.2 (1984). See *Sims* v. *Georgia*, 385 U.S. 538, 544 (1967); *Commonwealth* v. *Forrester*, 365 Mass. 37, 45-46 (1974).[3]

b. *Waiver of Miranda rights.* Although the police advised the defendant of his Miranda rights soon after they first observed him, they were not required to do so because the encounter was not custodial. "There is no requirement that warnings be given prior to '[g]eneral on-the scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process.' " *Commonwealth* v. *Merritt*, 14 Mass. App. Ct. 601, 604 (1982), quoting from *Miranda* v. *Arizona*, 384 U.S. 436, 477 (1966). See *Vanhouton* v. *Commonwealth*, 424 Mass. 327, 331, cert. denied, 522 U.S. 834 (1997). Further, the evidence indicates that to a large extent, the defendant spoke without any prompting or questioning by the police, and thus his statements were outside the scope of the Miranda doctrine for the additional reason that they were not the result of police

[3]When the record does not permit the conclusion that the judge resolved conflicts in the testimony or applied the correct legal standard to the facts, a remand for the express purpose of making subsidiary findings of fact and rulings of law is required. See *Commonwealth* v. *Louraine*, 390 Mass. 28, 39 (1983).

interrogation. See *Commonwealth* v. *Fortunato*, 466 Mass. 500, 519-520 (2013), and cases cited.

At the police station, the defendant was again advised of his Miranda rights and signed a written waiver of rights form. He had the presence of mind to decline to perform field sobriety tests and to decline to take the Breathalyzer test. The principal statement made by the defendant at this point was in response to questions by Deputy Chief Levy, who testified that the defendant was cooperative and had no difficulty in giving an account of his whereabouts and activities on the evening in question. On this record, the judge was warranted in concluding that the defendant made a valid waiver of his Miranda rights. See *Parham, supra* at 837-838.

The defendant relies primarily on *Hosey*, 368 Mass. 571. There, the question was whether the defendant waived his Miranda rights before making inculpatory statements concerning the sexual assault of a two year old child. The evidence consisted of the testimony of two police officers who arrested the defendant at 4:45 A.M. for drunkenness and disturbing the peace, after an evening in which he consumed a large amount of alcohol. They testified that the defendant was "extremely emotional, extremely high," and "abnormal." They added that the defendant was "detached from reality" and that there was "definitely something wrong with him." *Id.* at 575. When advised of his rights, the police informed the defendant that due to the hour (about 5:00 A.M.) "it would be tough to get a lawyer" if he wished to speak to an attorney. The defendant replied, "right on, man, let's talk about it. This is what I want to do, I want to talk about it. Let's get this over with." As to the availability of counsel at that hour, he said "he didn't need a lawyer and he would talk to [the officers]." *Id.* at 576. In reversing the judge's determination that there was a valid waiver of his Miranda rights, the court noted that multiple factors undermined the judge's determination that there was a valid waiver. *Id.* at 578. The result in *Hosey* turned on the combination of three factors: severe intoxication, the officers' description of the defendant as "detached from reality," and the defective administration of Miranda rights. See *Commonwealth* v. *Perrot*, 407 Mass. 539, 543 n.1 (1990).

The present case stands in contrast to *Hosey*. Although here, as in *Hosey*, the defendant was intoxicated, the fact that the defendant was emotional and agitated does not mean that he was "detached from reality." Moreover, in the present case, unlike in *Hosey*, there is no evidence of police coercion. Instead, the evidence indicates the defendant, without any prompting by the police, made statements that reflected his awareness of the serious nature of the charges and the potential consequences in terms of his liberty and family life. See *Commonwealth v. Duffy*, 36 Mass. App. Ct. 937, 939 (1994). The defendant had no difficulty in providing to the officers a coherent account of his activities on the night in question.[4]

With regard to the statements made by the defendant at the police station, the evidence was that he calmed down considerably in the hour to ninety minutes following his arrest. At the station, the defendant listened to a recitation of his Miranda rights, read the form, and signed it. He was responsive and cooperative in speaking with Deputy Chief Levy. The defendant made decisions with respect to filing a stolen motor vehicle report and whether to perform field sobriety tests and to take the breathalyzer test that could be described as rational choices that were in his best interests. See *Commonwealth v. Hilton*, 450 Mass. 173, 177 (2007). The evidence demonstrated that the police advised the defendant of his Miranda rights on several occasions before he was questioned, that he said he understood them, that he answered the questions in a cooperative manner and without hesitation, that he had no difficulty in making decisions when asked to take certain tests and file certain forms, and that the police did nothing to coerce or intimidate him into speaking. This evidence supports the judge's conclusion that there was a valid waiver of the defendant's Miranda rights. See *Commonwealth v. Williams*, 378 Mass. 217, 225 (1979). Thus, this case is governed by the general principle, "as with voluntariness generally, intoxication bears heavily on the validity of a

---

[4]The quintessential illustration of a case in which the defendant's statements were found to be the product of his debilitated condition and not volitional is *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960), where the court observed that "the evidence indisputably establishe[d] the strongest probability that Blackburn was insane and incompetent at the time he allegedly confessed."

Miranda waiver, although it is insufficient alone to require a finding of involuntariness." *Commonwealth* v. *Ward*, 426 Mass. 290, 295 (1997).

2. *Admissibility and sufficiency of the evidence regarding defendant's status as a second and subsequent offender.* The defendant next contends that the evidence submitted by the Commonwealth at the § 11A phase of his trial was both inadmissible and insufficient to prove he previously had been convicted of a third offense for OUI.

Defense counsel objected to the admission of all six exhibits offered by the Commonwealth. The first four exhibits were certified court records of a 1990 guilty plea for OUI in the Quincy Division of the District Court Department and two 1997 convictions of OUI in Superior Court in Norfolk County. The fifth exhibit was the defendant's certified driving history record from the Registry of Motor Vehicles (RMV), along with demographic identifying information. The sixth exhibit was his certified Board of Probation record containing his identifying information and a list of all charged offenses on his record since 1990, along with their dispositions.

a. *Admissibility of the evidence.* All six exhibits contained admissible prima facie evidence pursuant to the governing statute, G. L. c. 90, § 24(1)(*c*)(4).[5] The defendant proffers no theory that would render the first four exhibits inadmissible. He argues that the fifth exhibit, a certified copy of his RMV record, was inadmissible in violation of his rights pursuant to the confrontation clause under the rationale of *Commonwealth* v. *Ellis*,

_____

[5]General Laws c. 90, § 24(1)(*c*)(4), as amended by St. 2005, c. 122, § 6A, provides that "[i]n any prosecution commenced pursuant to this section, introduction into evidence of a prior conviction or a prior finding of sufficient facts by either certified attested copies of original court papers, or certified attested copies of the defendant's biographical and informational data from records of the department of probation, any jail or house of corrections, the department of correction, or the registry, shall be prima facie evidence that the defendant before the court has been convicted previously . . . . Such documentation shall be self-authenticating and admissible, after the [C]ommonwealth has established the defendant's guilt on the primary offense, as evidence in any court of the [C]ommonwealth to prove the defendant's commission of any prior convictions described therein. The [C]ommonwealth shall not be required to introduce any additional corroborating evidence, nor live witness testimony to establish the validity of such prior convictions."

79 Mass. App. Ct. 330 (2011) (*Ellis*). See *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305 (2009). However, *Ellis* makes clear that there is no *Melendez-Diaz* error in the admission of RMV records "kept in the ordinary course of business." *Ellis, supra* at 335. The fact that the records were *requested* in anticipation of trial is irrelevant, as they were "maintained independent of any prosecutorial purpose." *Ellis, supra*, quoting from *Commonwealth* v. *Martinez-Guzman*, 76 Mass. App. Ct. 167, 171 n.3 (2010). Accord *Commonwealth* v. *McMullin*, 76 Mass. App. Ct. 904, 904 (2010).

The defendant further relies on *Ellis* in objecting to the admission of his certified Board of Probation record in the sixth exhibit. The probation certification in *Ellis*, like the drug laboratory certification in *Melendez-Diaz*, is distinguishable from the automatically generated list of offenses that was admitted to show the defendant's prior OUI convictions. *Ellis, supra* at 333. Unlike those certifications, which were "prepared by a person who . . . engaged in certain deliberative decisions, and formulated evaluative statements and opinions . . . so that the certification could be used in litigation," *id.* at 333-334, the defendant's probation record is not testimonial. Like the RMV records discussed above, the probation record was admissible as a business record and as a summary of records regularly maintained by the Board of Probation. See *id.* at 335.

b. *Sufficiency of the evidence.* The defendant apparently contends that the exhibits were insufficient to prove that the instant OUI offense was his fourth. We disagree. The Commonwealth was only required to prove a prior third offense beyond a reasonable doubt. *Commonwealth* v. *Bowden*, 447 Mass. 593, 599 (2006). We discern from the six exhibits no less than three separate prior OUI convictions.

The sixth exhibit, the Board of Probation record, indicates that the defendant entered a guilty plea before the District Court on August 24, 1990, for the offense of operating while under the influence of alcohol. That docket number matches that of the court record in the first exhibit. The sixth exhibit also indicates that the defendant was convicted of an OUI charge (OUI resulting in serious injury, docket no. 103819) on August 14, 1997, in Superior Court in Norfolk County. This docket

matches the court records contained in the third exhibit. The Superior Court records also reference a third OUI charge, docket no. 103817, to which the defendant evidently pleaded guilty on the same day in 1997.

Taken together with the defendant's identifying information contained in the court dockets, the RMV records, and the Board of Probation records, there was sufficient evidence from which the judge could conclude that the defendant previously had been convicted of three offenses of operating while under the influence of alcohol.

*Judgments affirmed.*