By the Court (Rubin, Maldonado & Ditkoff, JJ.[1] ),
The defendant, Edwin Nunez, appeals from jury trial convictions on two counts of manslaughter, G. L. c. 265, § 1, in Superior Court. The defendant challenges only the denial of his motion to suppress various statements made to law enforcement and hospital personnel. Finding no error in the motion judge's conclusion that the challenged statements were made voluntarily by the defendant and that the defendant voluntarily waived his Miranda rights, we affirm.
1. Background.[2] On the morning of July 23, 2010, the defendant and Sophan Yin left 2 Butman Place in Lowell, where they were staying with the defendant's sometime paramour, Debbie Grossi, to purchase "crack" cocaine at a nearby apartment located at 342 Westford Street. The purchase did not go as planned; they returned to the house separately without the drugs or the eighty dollars Yin had given the defendant to pay for them. The defendant claimed he had been "burnt," or "scammed," by the dealers at the apartment. Both men were angry and upset and discussed getting their money back. During this time the defendant smoked some crack cocaine and consumed one-half of a pint of vodka and several beers.
Around 3:30 P.M. , the defendant, Yin, and Phouvieng Phouthavong left the residence and made the short walk to 342 Westford Street. They followed the defendant to an apartment upstairs. The two women inside the apartment admitted the defendant while Yin and Phouthavong waited outside the door. An argument between the defendant and the women about the money erupted and quickly intensified into a fight. Yin and Phouthavong fled, and witnesses reported two Asian men running out of the apartment,[3] followed by screams from a woman covered in blood.
Responding to 911 calls, Lowell police officers and other law enforcement personnel found the two women bleeding heavily from multiple stab wounds to the neck and chest. Both women died before they reached a hospital. Deoxyribonucleic acid evidence mixed with the victims' blood and collected from the apartment and a blood-stained knife recovered nearby matched the defendant.
The defendant returned to 2 Butman Place soon after. He was clearly intoxicated and very distressed, telling Grossi, "I'm going to get blamed for something I didn't do," before grabbing a kitchen knife and stabbing himself repeatedly. Grossi telephoned 911. Responding officers and paramedics found the defendant on the floor, bleeding heavily from stab wounds to the chest and abdomen, and rushed him to a hospital.
Subsequent investigation resulted in the defendant's indictment on two counts of murder in the first degree and two counts of assault and battery by means of a dangerous weapon. Prior to trial, the defendant moved to suppress statements he made to hospital and law enforcement personnel from July 23 through July 26, 2010. After an evidentiary hearing, a Superior Court judge denied the motion. The defendant was convicted of two counts of manslaughter on December 17, 2014, and this appeal followed.[4]
2. Standard of review. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " Commonwealth v. Callender, 81 Mass. App. Ct. 153, 154 (2012), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Clarke, 461 Mass. 336, 340 (2012), quoting from Commonwealth v. Bostock, 450 Mass. 616, 619 (2008).
3. Discussion. A defendant's statement is admissible only if made voluntarily, "regardless of whether [it is] made to police or civilians." Commonwealth v. Kolenovic, 478 Mass. 189, 198 (2017). The Commonwealth, moreover, must prove voluntariness "beyond a reasonable doubt." Commonwealth v. Knowles, 92 Mass. App. Ct. 617, 628 (2018), quoting from Commonwealth v. Tremblay, 460 Mass. 199, 206 (2011). Although "separate and distinct issues," we apply the same analysis to the voluntariness of a defendant's Miranda waiver as to the voluntariness of statements challenged on due process grounds. Commonwealth v. Woodbine, 461 Mass. 720, 729 (2012), quoting from Commonwealth v. Edwards, 420 Mass. 666, 673 (1995). "[T]he ultimate inquiry is 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.' " Knowles, supra, quoting from Commonwealth v. Molina, 467 Mass. 65, 75-76 (2014).
Statements that are the product of "a defendant's debilitated condition, such as ... drug abuse or withdrawal symptoms, [or] intoxication ... are not the product of a rational intellect or free will and are involuntary." Commonwealth v. Bell, 473 Mass. 131, 141 (2015), quoting from Commonwealth v. Allen, 395 Mass. 448, 455 (1985). Thus, "special care must be taken to assess the voluntariness of a defendant's statement where there is evidence that he was under the influence of alcohol or drugs." Commonwealth v. Brown, 462 Mass. 620, 627 (2012). An otherwise voluntary act, however, "is not necessarily rendered involuntary simply because an individual has been drinking or using drugs," Knowles, 92 Mass. App. Ct. at 628, quoting from Commonwealth v. Shipps, 399 Mass. 820, 826 (1987), nor is a statement made under "even profound distress" necessarily considered involuntary. Commonwealth v. Stroyny, 435 Mass. 635, 646 (2002).
Rather, such statements are admissible where a defendant proves alert, coherent, and capable of rational thought and conversation despite pain, injury, emotional distress, or the influence of alcohol or drugs. See, e.g., Commonwealth v. Wills, 398 Mass. 768, 776 (1986) (defendant's statements voluntary despite stab wounds to abdomen and arm where "his condition was described as stable, calm, and alert"); Brown, 462 Mass. at 627 (defendant's statements properly not suppressed where, although he "was sluggish from the influence of drugs, there [was] nothing to suggest that he was acting irrationally or was out of control"); Knowles, 92 Mass. App. Ct. at 620 (defendant's statement voluntary despite evidence he "was intoxicated on alcohol, marijuana, and prescription sedatives").
In Commonwealth v. Liptak, 80 Mass. App. Ct. 76, 77 (2011), the defendant was involved in a high-speed collision, killing another driver. The defendant was found unconscious and partially hanging out of his vehicle's front passenger side window. Id. at 78. He suffered fractures to his right tibia and fibula, a concussion, and lacerations to his head and face. Id. at 79. The defendant told emergency responders, "I'm never going to drink again," admitted he had been the driver, and mentioned drinking that night. Ibid. He appeared intoxicated and recorded a blood alcohol level of .19 at the hospital, where morphine and oxycodone were administered. Ibid. The defendant thereafter waived his Miranda rights and made other incriminating statements. See ibid. He later moved to suppress his statements, arguing "that the effects of the combination of injury, alcohol, emotional distress, and prescription medication rendered his statements, both at the accident scene and in the hospital, involuntary." Id. at 80. The motion was denied. Id. at 77.
In affirming, we emphasized that the defendant was alert and oriented, and responded coherently to questioning. Id. at 81. In spite of his "traumatic and painful injuries," the defendant "spoke cogently, answered questions promptly, and was able to carry on a conversation." Ibid. That the defendant "retained the presence of mind" to minimize his culpability by stating he had only "[o]ne or two beers" was also significant. Ibid. Ultimately, we determined that, "[d]espite the defendant's anxiety, physical trauma, and consumption of alcohol and pain medication," there was "no error in the motion judge's conclusion that the statements were voluntarily made." Id. at 81-82. Liptak is instructive here.
a. Statement number one. The first challenged statement in this case was made at approximately 4:00 P.M. on July 23, 2010, when officers initially encountered the defendant at 2 Butman Place. When asked what happened and who stabbed him, the defendant answered, "I'm depressed. I stabbed myself." Although he was injured and later determined to be intoxicated by alcohol and some amount of cocaine, officers testified that the defendant was conscious, responded appropriately, and was not visibly intoxicated or under the influence of drugs. The judge could credit this testimony, see Commonwealth v. Beland, 436 Mass. 273, 281 (2002), and nothing in the record requires a conclusion to the contrary. See, e.g., Wills, 398 Mass. at 776 ; Liptak, 80 Mass. App. Ct. at 80. See also Knowles, 92 Mass. App. Ct. at 628 (crediting police officer's observations as to defendant's lucid condition, despite evidence of drug and alcohol intoxication, in finding statements voluntary).
b. Statement number two. After arriving at the hospital at approximately 4:20 P.M. , the defendant was asked by the attending physician how he was injured. The defendant replied that "he was jumped, he ran away, and then stabbed himself." At that time, he was "somewhat groggy" and suffering from the stab wounds and a collapsed lung. The defendant, however, was awake and conversing, and registered sufficient cognitive awareness. His collapsed lung was unlikely to cause additional disorientation or dizziness, especially given that his vital signs were normal. Moreover, although a toxicology report indicated a blood alcohol level of .17, there was no trace of opiates in his system. The defendant's mental and physical condition, given the circumstances, did not render these statements involuntary. See Brown, 462 Mass. at 627. See also Liptak, 80 Mass. App. Ct. at 81 ("[A]lthough the defendant may have been anxious ... and was suffering from traumatic and painful injuries, he nevertheless made his statements voluntarily").
c. Statement number three. The next challenged statement occurred at approximately 6:40 P.M. In response to hearing a nearby police officer mention to the nurse that the two victims were dead, the defendant allegedly said, "I'm sorry, I did that too." By this time the defendant was in stable condition with improved alertness. He was following commands and answering questions appropriately, registered increased cognitive awareness, and was oriented to person, place, and time. Pain medication had not yet been administered, and the nurse could not discern any odor of alcohol. The facts again permit the motion judge's finding that this statement was made rationally and voluntarily. See Liptak, 80 Mass. App. Ct. at 80-82 (combination of "injury, alcohol, emotional distress, and prescription medication" did not render defendant's statements involuntary); Commonwealth v. Bigley, 85 Mass. App. Ct. 507, 514 (2014) (although intoxicated, "the fact that the defendant was emotional and agitated does not mean he was 'detached from reality' ").
d. Statement number four. Between 7:00 P.M. and 8:00 P.M. , the defendant initiated a conversation with a nursing assistant. The defendant said he was robbed and stabbed while attempting to purchase drugs from two Asian men. According to the defendant, they robbed him of eighty dollars and said they were going to kill him, so the defendant grabbed their knife and started stabbing himself.
The nursing assistant testified that the defendant did not appear "crazy." Rather, they were able to converse and to understand each other. This is consistent with the testimony of other hospital personnel that the defendant was alert, oriented, and able to communicate normally at the time. Thus, despite the significant pain, intoxication, and medication, there is adequate evidence to support the motion judge's conclusion that the statement was voluntary. See, e.g., Wills, 398 Mass. at 776 ; Liptak, 80 Mass. App. Ct. at 81 ; Bigley, 85 Mass. App. Ct. at 514.
e. Statement number five. The last challenged set of statements from July 23, 2010, was made around 8:30 P.M. Detective Felix Figueroa and another officer, being assured by a nurse that the defendant was able to speak with them, first entered the defendant's hospital room at approximately 8:09 P.M. They left shortly thereafter, though, because the defendant appeared too drowsy and distracted by pain to have a productive conversation.
Detective Figueroa returned approximately fifteen minutes later. The nurse repeated that the defendant was fine to talk to the detective, and the detective found the defendant awake, alert, and speaking with family members in his room. The family agreed to let Detective Figueroa speak with the defendant and left the room.
When asked again what happened, the defendant provided a detailed account of the events leading to his injuries. He described (1) attempting to buy drugs from two women at the Westford Street apartment, with eighty dollars provided by an Asian male, and returning with neither money nor drugs; (2) an ensuing altercation between the women and the two Asian men at Westford Street about the money; (3) being stabbed twice by one of the Asian men during the fight; and (4) fleeing the scene and returning to Butman Place, where he stabbed himself repeatedly because he was depressed. Again, there is ample evidence from which the motion judge could conclude that these statements were voluntary.
The defendant was "much more calm" and no longer seemed to be in great pain. He had received opiate-based pain medications at 7:00 P.M. which, consistent with expert medical testimony, appeared to calm the defendant and to assist his ability to focus and to converse, rather than making him irrational or unreliable. Witnesses observing him around that time similarly described the defendant as alert, coherent, and conversational, and the attending nurse and the defendant's own family saw no reason he would be unable to talk with police. Additionally, the defendant had been at the hospital for nearly four hours and was no longer legally intoxicated from the alcohol.
Significantly, by this point the statements themselves indicate a pattern of rational thinking on the defendant's part. Parts of his story changed, but the defendant consistently minimized his culpability, see Liptak, 80 Mass. App. Ct. at 81, while increasingly portraying himself as a victim.[5] In seeking a plausible alibi and attempting to redirect blame, the defendant demonstrated logical reasoning, which is strong evidence that these statements were voluntary. See, e.g., Commonwealth v. Wolinski, 431 Mass. 228, 232 (2000) (false accounts to police "revealed the defendant's rational effort at self-preservation, and ... clearly reflected rational choice"); Bigley, 85 Mass. App. Ct. at 514 (concluding statements were voluntary where defendant "made statements that reflected his awareness of the serious nature of the charges and the potential consequences in terms of his liberty"). Moreover, that the defendant's differing accounts increasingly provided details otherwise corroborated by the record further reveals clear thinking. See Commonwealth v. Wilborne, 382 Mass. 241, 252 (1981) (defendant's "ability to recall the detailed chronology of the events recited in the statement 'belie[d] a person whose mind was befogged by any sort of drug' ").
f. Statement number six. Throughout the early morning hours of July 24, 2010, the defendant was administered more pain medication. Around 8:00 A.M. , he complained of pain and was given another dosage, then felt better and fell asleep shortly thereafter. After the defendant awoke later that morning, he described a similar version of events to the attending nurse as he told to Detective Figueroa the prior evening. He added, however, that during the fight at the Westford Street apartment he was stabbed first by one of the women before he wrestled the knife away and stabbed both of them.
These statements were made around 10:00 A.M. , when the defendant was alert and oriented, coherent, and able to follow commands and to converse normally while recounting his narrative in detail. See Wilborne, 382 Mass. at 252. Although the defendant admitted to stabbing the women in self-defense, this version remains consistent with his continuing attempt to minimize criminal liability and deflect blame. See Wolinski, 431 Mass. at 231-233 ; Liptak, 80 Mass. App. Ct. at 81. As with the previous statements, we discern no error in the motion judge's finding that these statements were voluntary.[6]
g. Statement number seven. Detective Figueroa and another officer returned to interview the defendant at the hospital around 5:40 P.M. on July 25. The parties do not dispute that the defendant's statements at that time were the product of a custodial interrogation, nor that the defendant signed a waiver of his Miranda rights. The defendant, however, argues that the waiver was not voluntary on account of his condition. We disagree.
The interviewing officers testified that the defendant was alert, engaged, and conversational at the time of the waiver. He was calm and collected throughout the interview, responded appropriately to all questions, and appeared to consider his responses before answering. The defendant stated that he understood the seriousness of the situation, and there is no reason to think otherwise given the officers' testimony. See Knowles, 92 Mass. App. Ct. at 628 (judge could credit police observations of defendant's conduct at time of statements). See also Commonwealth v. Ringuette, 60 Mass. App. Ct. 351, 354, S.C., 443 Mass. 1003 (2004) (statements voluntary where defendant "appeared ... sober, coherent, [and] responsive" despite suffering severe withdrawal symptoms and previously ingesting crack cocaine). Moreover, it is significant that when the defendant signed the waiver he had the presence of mind to refuse to have his statements recorded, and that he continued to change his narrative in response to information proffered by the officers. See, e.g., Wolinski, 431 Mass. at 232-233 ; Liptak, 80 Mass. App. Ct. at 81 ; Bigley, 85 Mass. App. Ct. at 514.
Given that the judge was "free to reject the testimony of the defendant's expert" as to the amount[7] or effect of the medications administered and could credit the testimony of the officers, Beland, 436 Mass. at 281, it was not error to conclude that the defendant's waiver was made voluntarily. See Knowles, 92 Mass. App. Ct. at 629 ("With deference to the ... judge's credibility determinations, we have no difficulty concluding that the Commonwealth proved beyond a reasonable doubt that the defendant made a knowing, intelligent, and voluntary waiver").[8]
Judgments affirmed.

The panelists are listed in order of seniority.

We set out the background facts to provide context for the reader, but do not rely on them for the purpose of deciding the issues regarding the suppression motion. See, e.g., Commonwealth v. Deramo, 436 Mass. 40, 43 (2002) ; Commonwealth v. Dew, 478 Mass. 304, 309 n.3 (2017).

Yin and Phouthavong are both of Asian descent.

The Commonwealth did not proceed on the assault and battery counts.

With the exception of the third statement, the defendant progressed from (1) self-inflicted wounds caused by depression to (2) self-inflicted wounds caused by a robbery to (3) self-inflicted wounds caused by a robbery and attempted murder by men matching the description of those implicated in the same crime from which the defendant hoped to exculpate himself.

Approximately one hour after the statements to the attending nurse, the defendant told a doctor that he had been stabbed and had stabbed himself with a kitchen knife. The defendant raises no specific objection on appeal to this bare-bones statement. In any event, the motion judge was justified in finding this statement voluntary for the same reasons he found the statements to the attending nurse voluntary.

It is unnecessary to determine precisely how much morphine the defendant received in the seven hours leading up to this interview, as the motion judge based his determination on the defendant's appearance and actions, and specifically stated that he found the statements voluntary "even accepting" the amount of morphine argued by the defendant.

The defendant raises no challenge on appeal to the admissibility of the statements he volunteered at booking.