COMMONWEALTH *vs.* WILLIAM GONZALEZ.

No. 01-P-1060.

Hampden. November 21, 2002. - October 17, 2003.

Present: ARMSTRONG, C.J., PERRETTA, & DOERFER, JJ.

*Arrest. Probable Cause. Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Practice, Criminal,* Voluntariness of statement, Admissions and confessions. *Waiver.*

At a criminal trial, the admission in evidence of the defendant's postarrest statements to the police was not erroneous, where the police had probable cause to arrest the defendant [626-627]; where the defendant's postarrest waiver of his Miranda rights was knowingly and voluntarily made, given that the defendant understood English [627-629]; and where the defendant's postarrest statements were voluntarily made [629].

At the trial of a criminal complaint charging the defendant with indecent assault and battery on an eight year old girl and assault and battery, statements made by the prosecutor in his closing argument, while either disfavored risky, dramatic, hyperbolic, and rhetorical embellishments or not based on the evidence, did not create a substantial risk of a miscarriage of justice, where four witnesses testified to the victim's fresh complaint testimony, the arresting officer testified as to the defendant's inculpatory statements, the judge instructed that closing arguments were neither evidence nor a substitute for evidence, and the jury acquitted the defendant on the assault and battery charge. [629-630]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on September 3, 1998.

The case was tried before *W. Michael Goggins,* J.

*Ian Stone* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. After a jury trial in the District Court, the seventy-six year old defendant was found guilty on a complaint charging him with indecent assault and battery on an eight year old girl whom we shall refer to as Jane. See G. L. c. 265, § 13B. On appeal the defendant challenges the use at trial of statements

he made to the police. He argues that his statements flowed from an illegal arrest and an invalid waiver of his Miranda rights. He also argues that the prosecutor's closing argument created a substantial risk of a miscarriage of justice. We affirm the conviction.[1]

1. *The trial.* There was evidence, both direct and hearsay (fresh complaint), to show that the defendant was well-acquainted with Jane and her family. He was so like a family member, a grandfather, that Jane called him "Tio," meaning uncle in Spanish.

Jane returned home from school at about 2:30 P.M., on September 2, 1998. Because she found no one at home and did not have a key, she sat on the outside steps to await her older sister's arrival. As she waited, the defendant drove up in his car, got out, and asked what she was doing. Jane told him that she was waiting for her older sister. The defendant then grabbed her by her wrist and pushed her toward his car. Jane was scared and tried to resist, but the defendant held her too tightly for her to pull away. He opened the front passenger door, pushed her into his vehicle, walked around it, and got into the driver's seat.

Once the defendant was inside the vehicle, he asked Jane if she had a boyfriend. When she replied "no," the defendant squeezed her vagina and said, "I'm your boyfriend, right?" Jane slapped his hand away, opened the car door, ran to a neighbor's house, and, now crying, pounded on the door. Her neighbor invited her in and gave her a cold drink.

When Jane told the neighbor what had happened, the neighbor made Jane telephone her mother at her place of work. The mother immediately came to the neighbor's home, retrieved Jane, and brought her to her pediatrician's office. Jane told her pediatrician what had happened, and he advised her mother that she should report the incident to the police. The mother followed the pediatrician's advice and notified the Springfield police department. Jane told a police officer that the defendant had approached her, kissed her, forced her into his car, and

---

[1] The complaint also charged the defendant with assault and battery and kidnapping. See G. L. c. 265, §§ 13A, 26. The jury acquitted the defendant of assault and battery, and the Commonwealth entered a nolle prosequi on the kidnapping charge.

grabbed her vagina. Officer Richard Rief was then dispatched to the defendant's residence to investigate a report that he had abused a child.

At this point in the trial, the defendant sought a voir dire hearing concerning the voluntariness of the statements he made while in the custody of the police. He claimed that such a hearing was necessary to determine whether his statements were the product of a knowing and intelligent waiver of his Miranda rights and were voluntarily made. See *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Although the defendant had not filed a motion to suppress his statements prior to trial pursuant to Mass.R. Crim.P. 13(c)(1), 378 Mass. 873 (1979), the judge correctly granted his request. See *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511 (1989).

Officer Rief was the only witness at the voir dire hearing. He testified that on September 2, 1998, at about 6:00 P.M., he and his partner, in full uniform and driving a marked police cruiser, arrived at the defendant's address for purposes of investigating Jane's complaint. They arrived at the defendant's seventh-floor apartment and knocked at the door. The hallway was a rectangular shaped, well-lighted area about forty feet wide and thirty feet long. They knocked on the door to the defendant's apartment without also announcing that they were police officers.

As related by Rief, a "brief moment later," the door was opened by an elderly Hispanic male, later identified as the defendant. As the officers stood in the hallway and, within a second, before they could say anything, the defendant blurted out in plain and understandable English, "I didn't touch her. I didn't touch her." Rief then asked the defendant, "Sir, can you please step out into the hallway?" The defendant complied and stepped from his apartment into the hallway. Rief asked him his name and for some identification to prove the same. After the defendant confirmed that he was William Gonzalez, Rief advised him that he was under arrest for assaulting Jane, placed him in the police cruiser, and brought him to the police station.

After arriving at the station and booking the defendant, Rief read him his Miranda rights in English. Rief testified that he assumed that the defendant, who spoke with a Spanish accent,

understood English and that his assumption was based upon the fact that the defendant answered his questions in English. The defendant was not asked to sign a Miranda waiver card. Although the booking area where the defendant was advised of his rights was under routine video surveillance, no tape of the interrogation was produced at trial.[2]

During the interrogation, which was conducted in English, the defendant admitted to Rief that he had been in his car in front of Jane's home and that she was in his car during the time of the events in question. After making those statements, the defendant refused to say anything more. Specifically, and according to Rief, the defendant said, "I don't want to talk." Upon hearing that, the police ended the interview.

Based upon the evidence before him, the judge found that the intent of the police in going to the defendant's home "was to confirm [his] identity . . . and ask him some questions about this incident," that the statement he made upon opening his door and seeing the uniformed police was "entirely spontaneous,"[3] and that the defendant understood the English language and Rief's statements to him at the police station, that is, the Miranda warnings. These findings of fact led the judge to conclude that the defendant's statements to Rief were knowingly and voluntarily made and were admissible in evidence. After Rief related the defendant's statements to the jury, the judge, pursuant to the defendant's request, instructed them on our "humane practice" rule. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 151-153, cert. denied, 457 U.S. 1137 (1982).

Although the defense did not present any witnesses to testify, cross-examination of the Commonwealth's witnesses and the defendant's closing argument were to the point that the incident was based upon Jane's embellishment of an innocuous encounter. The prosecutor countered with argument that the defendant claims was fraught with improper rhetorical ques-

---

[2]There was, however, testimony showing that, after holding tapes for thirty days, the police would reuse them. In any event, the record gives no indication that the defendant made a request for a copy of the tape.

[3]The defendant does not challenge the judge's finding and conclusion on this statement. See *Commonwealth* v. *Diaz*, 422 Mass. 269, 271 (1996); *Commonwealth* v. *Duarte*, 56 Mass. App. Ct. 714, 721 (2002).

tions, mischaracterizations of the theory of defense, forbidden invitations that the jury put themselves in Jane's place, statements vouchsafing for Jane's credibility, misstatements of the facts, and reference to facts not in evidence.[4] No objections were made to the prosecutor's closing argument.

2. *The defendant's postarrest statements.* We take up first the defendant's claim that his postarrest statements to the police should have been suppressed. On this point the defendant argues that (1) his arrest without a warrant was illegal and his statements, therefore, subject to suppression; and (2) his waiver of his Miranda rights and his statements to the police were not knowingly, intelligently, and voluntarily made. In considering this claim, we accept the judge's findings of fact, absent clear error, but make independent review of the correctness of his application of constitutional principles to the facts found. See *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002).

In claiming that his arrest was illegal, the defendant argues that if his arrest took place within his apartment, there were no justifying exigent circumstances, and, if it took place in the

---

[4]Specifically, the defendant complains about the following remarks:

(1) "As a defense attorney in a case like this and there is a lot of evidence to a finding of guilty, what are you going to do about that? Well, one thing that you can do, which has been done, is to try to distract you with things that really don't matter, that don't go to the heart of the issue. . . . [Whether the victim was wearing a backpack, whether her sister was on her way home, whether the victim was waiting for her mother or her sister] are all things that are mere distractions . . . really that have nothing to do with anything."

(2) "How would you like to be sitting there with all these strangers looking at you and asking you questions."

(3) "[Jane] told you that the defendant, a person she knows well, pulled up in his car. She told you . . . that he grabbed her by the arm and he got her in his car. She knows him well and she thinks of him as a grandfather. Up until that point she wasn't afraid. She was reluctant to go with him, she is not interested in going for a ride with a seventy year old guy, even if he is a grandfather figure."

(4) "[The neighbor] told you she heard a doorbell. She looked out and didn't see anyone. The door rang again and she went out and found [Jane] in a heap on the steps sobbing."

(5) "[Jane] is a well-brought up child and she knows what she is supposed to do. If somebody touches you wrong, you tell your mother and then you go to the police and do whatever your mother tells you to do."

(6) "When you are out to arrest or investigate a felony, you don't allow the person to go back into his house: maybe he has a weapon."

hallway, the police wrongfully induced him to step outside his apartment. As to the first ground, for purposes of the admissibility of the postarrest statements it makes no difference if the defendant was arrested unlawfully in his home. The police had probable cause to arrest him, and his postarrest statements are therefore admissible so long as he voluntarily waived his Miranda rights and voluntarily made the statements. See *Commonwealth* v. *Marquez*, 434 Mass. 370, 377-379 (2001). The defendant did not raise at trial his alternative claim, that he was wrongfully induced or coerced into the hallway. That being so, the judge made no findings of fact on this issue, and it cannot now be raised on appeal. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 678-679 (1991). Even were we to assume that the defendant's presence in the hallway was due to illegal conduct by the police, we would see no substantial risk of a miscarriage of justice so long as the defendant's waiver of his Miranda rights and his statements to the police were voluntary. See *Commonwealth* v. *Garcia*, 409 Mass. at 679; *Commonwealth* v. *Marquez*, 434 Mass. at 377-378.

*Marquez* brings us to the questions whether the defendant's postarrest waiver of his Miranda rights and his statements to the police were knowingly and voluntarily made. Although these issues are separate, each is determined on the basis of the totality of the surrounding circumstances. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 673 (1995); *Commonwealth* v. *Jackson*, 432 Mass. 82, 85-86 (2000). See generally Smith, Criminal Practice §§ 367-371 (2d ed. 1983). The relevant factors to be considered in making both determinations include a defendant's age, education, intelligence, emotional stability, physical and mental condition, and the details of the interrogation, including the recitation of the Miranda warnings. *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986). *Commonwealth* v. *Jackson*, *supra* at 86.

Based upon the judge's findings of fact as well as those "clearly evident from the record," *Commonwealth* v. *St. Peter*, 48 Mass. App. Ct. 517, 520 (2000), quoting from *Commonwealth* v. *Parham*, 390 Mass. 833, 837-838 (1984), we conclude that the defendant's waiver and his statements were knowingly and voluntarily made.

In arguing that he did not voluntarily, knowingly, and intelligently waive his Miranda rights, the defendant focuses upon the judge's finding that he could understand English. He claims that the sole basis for this finding was an exchange that had occurred on the morning of the second day of trial, when the defendant challenged the accuracy of the interpreter's translation.[5] Although the judge did not make detailed findings concerning the defendant's ability to understand English, we think his conclusion evident from the record. The first words spoken by the defendant upon seeing the police were spontaneously uttered in English — "I didn't touch her. I didn't touch her." Rief spoke to the defendant in English, and the defendant responded in English. His responses included his admission that he and Jane were in his car in front of Jane's home during the time of the incident in dispute as well as his refusal to say anything more.[6] We see no error in the judge's finding and conclusion that the defendant understood English and that the

---

[5]The following exchange had occurred:

INTERPRETER: "Excuse me, Judge, the defendant seems either to not be able to hear me, that is, to hear the interpreter, or not to understand. He said, 'I can hear you, but you are not interpreting well.'"

JUDGE: "How would he know that?"

INTERPRETER: "'Because I am listening to you and I don't know what you are saying.'"

JUDGE: "Well, please describe the problem that you are having, sir, so the Court can understand."

INTERPRETER: "'Okay, it's all right.'"

JUDGE: "Okay."

The transcript does not reflect any subsequent objection by the defendant, and we infer that the defendant had no further hearing difficulties and the issue was resolved.

[6]To bolster his claim that he had difficulty understanding English, the defendant relies upon and quotes from a transcript of a hearing conducted about five months prior to trial. The transcript is of the colloquy conducted on the defendant's tendered but subsequently withdrawn offer to plead guilty during which he told the judge that although he understood English and the questions put to him, he could not hear well. But see Mass.R.Crim.P. 12(f), 378 Mass. 870 (1979) ("[E]vidence of a plea of guilty, later withdrawn, . . . or of an offer to plead guilty . . . to the crime charged or any other crime, or statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceedings against the person who made the plea or offer"). However, there is nothing in the record before us to show that the colloquy transcript was ever put before the trial

Commonwealth had proved beyond a reasonable doubt (see *Commonwealth* v. *Edwards*, 420 Mass. at 669) that he knowingly, intelligently, and voluntarily waived his Miranda rights.

As for the claim of a lack of voluntariness in the statements he made after receiving his Miranda warnings, the defendant points not only to his alleged inability to understand English, a claim we have decided against him, but also to his alleged hearing difficulties and his age. As for these claims, see *Commonwealth* v. *Filippidakis*, 29 Mass. App. Ct. 679, 680, 687 (1991) (upholding the voluntariness of admissions by an "elderly" defendant who had "difficulties" with the English language) and note 6, *supra*.

It follows from what we have said that we have no basis for reversing the defendant's conviction on the basis of the judge's conclusions that the defendant's waiver of his Miranda rights was knowingly, intelligently, and voluntarily made, as were the statements that he thereafter made to the police.

Because we have no cause to reverse the defendant's conviction on the basis of the judge's determination that his postarrest admissions could be put before the jury, we must next consider whether statements made by the prosecutor in his closing argument constituted error and, if so, whether any such error created a substantial risk of a miscarriage of justice.

Our reading of the transcript of the relatively brief closing argument leads us to conclude that each of the statements set out in paragraphs (1) through (5), see note 4, *supra*, was, at best, a disfavored risky, dramatic, hyperbolic, and rhetorical embellishment. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 287 (1991); *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 14 (1993). However, the remark of the prosecutor set out in paragraph (6) of note 4, *supra*, that is, the suggestion of a possibility that the defendant might have possessed a weapon at the time of his arrest, was indisputably improper. Even if intended as a generality, there was no basis in the evidence for such a remark.

Even if any or all of these statements were improper and ir-

---

judge. In any event, and as stated, the basis for the judge's conclusion that the defendant understood English is evident from the trial transcript.

respective of whether they are considered separately or cumulatively, we see no substantial risk of a miscarriage of justice. Four witnesses testified to Jane's fresh complaint testimony, Rief related the defendant's inculpatory statements to the jury, the judge instructed that closing arguments were neither evidence nor a substitute for evidence, and the jury acquitted the defendant on the complaint charging him with assault and battery. See *Commonwealth* v. *McCravy*, 430 Mass. 758, 765-766 (2000).

*Judgment affirmed.*