NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1409                                          Appeals Court

COMMONWEALTH  vs.  LAWRENCE KNOWLES.


No. 16-P-1409.

Suffolk.     November 3, 2017. - January 10, 2018.

Present:  Wolohojian, Massing, & Wendlandt, JJ.


Witness, Cross-examination.  Practice, Criminal, Cross-
    examination by prosecutor, Admissions and confessions,
    Voluntariness of statement, Waiver.  Constitutional Law,
    Admissions and confessions, Voluntariness of statement,
    Waiver of constitutional rights.  Waiver.  Evidence, Cross-
    examination, Admissions and confessions, Voluntariness of
    statement.




    Complaint received and sworn to in the Central Division of
the Boston Municipal Court Department on January 15, 2014.

    The case was tried before Tracy-Lee Lyons, J.

    A motion to stay execution of sentence, filed in the
Appeals Court on June 24, 2016, was heard by Carhart, J.


    Lauren A. Montana for the defendant.
    Paul B. Linn, Assistant District Attorney (Amanda Read
Cascione, Assistant District Attorney, also present) for the
Commonwealth.

MASSING, J.  This appeal requires us to apply the rule prohibiting cross-examination by innuendo, most recently enunciated in Commonwealth v. Peck, 86 Mass. App. Ct. 34 (2014) (Peck), to the cross-examination of three defense witnesses:  an expert witness, a lay witness, and the defendant himself.

A jury in the Central Division of the Boston Municipal Court Department found the defendant guilty of two counts of unlawful possession of a loaded firearm in violation of G. L. c. 269, § 10(a), (n).  The primary issues at trial were whether the defendant knowingly possessed the two firearms found near his truck and, in this regard, whether his threatening statements to police officers and subsequent waiver of his Miranda rights were voluntary.  We conclude that the prosecutor's cross-examination of the defendant was proper and that the cross-examination of the defendant's lay witness was improper but not prejudicial.  We further hold that Peck does not apply to the cross-examination of expert witnesses and that the defendant's statements and Miranda waiver were voluntary.[1]  Accordingly, we affirm.

---

[1] After the defendant filed a notice of appeal from the judgments, he filed in this court a motion to stay execution of his sentence, which a single justice denied.  The defendant also filed a notice of appeal from that order; our decision here renders this portion of the appeal moot.  See Commonwealth v. Berrios, 84 Mass. 521, 522 n.2 (2013).

Background.  1.  Commonwealth's case.  At 2:45 A.M. on January 12, 2014, Boston police Officers Mario Santillana and Jose Acosta were dispatched to the parking lot behind a building on Centre Street in the Jamaica Plain section of Boston.  The defendant was seated in the driver's seat of a parked red truck, alone, crouched down with his hands folded under his arms, staring straight ahead.  Santillana knocked on the closed window to get the defendant's attention.  The defendant muttered to himself, looked up at Santillana, and said, "I don't have to talk to you"; the defendant then resumed his prior position, staring ahead and mumbling.  The officers called for an ambulance to conduct a wellness check and to see if the defendant needed help.

The officers opened the doors of the truck in an attempt to speak with the defendant.  Santillana did not observe any signs of alcohol or drug use.  The defendant looked Santillana straight in the eye and said, "I'll shoot you all."  Santillana asked the defendant to repeat himself.  The defendant responded, "I have enough for nine of you."  When the defendant refused the officers' requests to show them his hands or to get out of the truck, they attempted to pull him out.  He allowed his body to go limp and nearly fell; the officers pulled him to his feet, frisked him for weapons, and handcuffed him.  He then "stood up under his own power" and began to speak clearly to the officers,

asking them why he was being handcuffed. They escorted him to their cruiser, the defendant walking without assistance, and placed him in the back seat. When emergency medical personnel arrived, the officers "waved [them] off . . . because [the defendant] was now communicating with [the officers] and . . . [they] were able to go back and forth with him."

The officers searched the area around the defendant's truck and found a revolver, a semiautomatic pistol (both .22 caliber), some marijuana, and a number of the defendant's personal items on the ground. After finding the first gun, Acosta recited to the defendant his Miranda rights and asked if he understood them. The defendant "nodded his head and he said, '[Y]ep.'" The defendant explained to the officers that the two guns were a gift from "[h]is roommate, his girlfriend, Donna," and "that they were only 22s and he didn't think he needed a permit for them."

2. Defense witnesses. The defendant and Donna Brashears, the woman with whom he was living in Norridgewock, Maine, at the time of his arrest, both testified that he did not own or possess any handguns. The defendant also testified that he suffered constant pain from a number of injuries, including a broken leg and ankle sustained during military training in Fort Bragg, North Carolina, and head injuries from multiple automobile collisions. He received treatment at the Veterans

Administration hospital (VA hospital) in Togus, Maine, where "[a]ll [his doctors] want[] to do is give [him] drugs . . . I'm a Guinea pig down there."  He testified that he took a number of prescription medicines -- "[f]rom Tramadol to Meloxicam to codeine to you name it."  He also self-medicated with marijuana, for which he "sent and got a card," and "just a couple [of] shots of whiskey at night."

The defendant testified that the day before his arrest he was driving from Maine to Foxwoods Casino, but he "must have got detoured in Boston or something" and went to an ice show at the TD Garden instead.  The next thing he remembered was waking up in a police cruiser.  He insisted that he did not drink and drive, that he had consumed only one shot of whiskey at "some little bar" near the TD Garden that day, that he did not take any codeine or sleeping pills, but that he had smoked some marijuana.

Dr. Montgomery Brower, a forensic psychiatrist, offered his clinical opinion that the defendant "was intoxicated on alcohol, marijuana, and prescription sedatives at the time of the alleged incident," and that his impairment "did [affect] his abilities that are relevant to determining whether or not his statements were voluntary and free."  Brower also stated that the defendant

suffered from a "blackout" during police questioning.[2]  In forming his opinion, Brower conducted a "typical medical examination," which included meeting twice with the defendant and reviewing "records concerning [the defendant's] alleged offense and also his medical history," including police reports and medical reports from the VA hospital and Maine Medical Center.

We set forth the details of the prosecutor's cross-examination of the defense witnesses in the discussion, infra.

Discussion.  1.  Cross-examination by innuendo or insinuation.  The defendant contends that the prosecutor's cross-examination of three defense witnesses (Brashears, Brower, and the defendant) violated the rule against cross-examination by innuendo, which prohibits impeaching witnesses with statements they allegedly made to third parties if the witness denies the statement and the third party is not available to testify.  Peck, 86 Mass. App. Ct. at 39-40.

An attorney conducting cross-examination must use caution when attempting to impeach a witness with facts not in evidence. To ask such questions, "the examiner should be required to

---

[2] The judge gave the jury a "humane practice" instruction, explaining that before considering any statement made by the defendant, the jurors must find beyond a reasonable doubt that the statement was voluntary, and that evidence of the defendant's intoxication, drug use, and physical and mental condition is relevant to that determination.  See Commonwealth v. Tavares, 385 Mass. 140, 152 (1982).

represent that he has a reasonable basis for the suggestion, and also to be prepared with proof if the witness does not acquiesce in the suggestion by giving a self-impeaching answer." Commonwealth v. Delrio, 22 Mass. App. Ct. 712, 721 (1986). "Without such assurances, the questioning of the witness is improper, for it would amount to allowing the examiner to smear the witness by insinuation." Ibid. See Commonwealth v. Fordham, 417 Mass. 10, 20 (1994), quoting from Commonwealth v. White, 367 Mass. 280, 284 (1975) ("It is error for a prosecutor 'to communicate impressions by innuendo through questions which are answered in the negative . . . when the questioner has no evidence to support the innuendo'").

In Peck, 86 Mass. App. Ct. at 35, the prosecutor asked a defendant accused of automobile insurance fraud "a series of questions about prior incriminating statements she allegedly made to a former boyfriend," in which she admitted and described the fraudulent scheme. Although the prosecutor possessed a report of an interview of the boy friend, prepared by a Massachusetts insurance fraud bureau investigator, the boy friend was neither present in court nor available to testify. Id. at 37-38. Believing that the insurance fraud bureau report gave the prosecutor a good faith basis, the judge permitted the prosecutor to cross-examine the defendant with the details of

her confession, over objection and despite the defendant's repeated denial of the statements attributed to her.  Ibid.

We held that "[i]t was error to permit this type of cross-examination of the defendant, which improperly impeached the witness by insinuation."  Id. at 35.  "Massachusetts evidence law prohibits 'an attorney, through cross-examination of a witness, [from] communicat[ing] an impression by innuendo that he or she possesses as yet undisclosed information, with no good faith basis for doing so.'"  Id. at 38, quoting from Commonwealth v. Johnston, 467 Mass. 674, 699 (2014).  We further observed that the better practice would have been first to ask the defendant whether she recalled the conversation with the boy friend.  Peck, 86 Mass. App. Ct. at 40 n.11.  If she did, "the prosecutor could have asked at least one additional question such as whether the defendant made statements about her involvement . . . in a plan to defraud the insurer."  Ibid.  If she did not, the prosecutor could have attempted to refresh the defendant's recollection using the boy friend's statement.  Ibid.[3]

---

[3] See United States v. Harris, 542 F.2d 1283, 1307 (7th Cir. 1976) ("[W]hen an attorney lays a foundation by asking a witness about prior inconsistent statements, it is reversible error to fail to produce the person to whom the statement was made if the witness denies making the statement"), citing United States v. Bohle, 445 F.2d 54, 73-74 (7th Cir. 1971), overruled on other grounds by United States v. Lawson, 653 F.2d 299, 303 n.12 (7th Cir. 1981).

Similarly, in Commonwealth v. Christian, 430 Mass. 552 (2000), overruled on other grounds by Commonwealth v. Paulding, 438 Mass. 1 (2002), a prosecutor cross-examined the defendant with incriminating statements he allegedly had made to a fellow jail inmate prior to trial. Christian, supra at 559-561. Although the Commonwealth was not prepared to call the other inmate as a witness, during cross-examination of the defendant, the prosecutor "put before the jury the incriminating statements by the defendant [to the witness], each one of which the defendant denied." Id. at 560-561 (footnote omitted). Even assuming that the prosecutor had a good faith basis for impeaching the defendant with statements he had allegedly made to the inmate,[4] the court held that it was improper for the prosecutor "to continue to cross-examine the defendant in the face of his consistent denials," without an assurance that she would call the inmate to testify. Id. at 562. "To do otherwise would permit the prosecutor to smear the defendant by extrajudicial statements made by [the inmate] while denying the

_____

[4] The prosecutor in Christian, supra at 561, did not provide the judge with any documentary evidence to support the inmate's version of the defendant's statements. On appeal, the Commonwealth claimed "that the prosecutor was relying on a letter that [the inmate] allegedly had written to the prosecutor before the trial," although the letter was not shown to the judge, marked for identification, or included in the record. Ibid.

defendant the opportunity to impeach [the inmate's] credibility." Id. at 563.

a.  Cross-examination of defendant's lay witness.  The prosecutor's cross-examination of Brashears mirrored the questioning held to be improper in Peck.  To challenge Brashears's testimony that she had never seen the defendant with a gun during the four years she had lived with him, the prosecutor asked her about contrary statements that she allegedly had made to a Maine State trooper, Scott Duff.  Duff was not on the witness list, was never summonsed to appear, and was not present in court.

After establishing that Brashears had been with the defendant at the VA hospital in Togus, Maine, about one month after his arrest in Massachusetts, the prosecutor asked Brashears if she remembered that Duff was also there.  She did not.  The prosecutor then, over objection by defense counsel,[5]

---

[5] At sidebar, defense counsel objected on the basis that the prosecutor was impermissibly attempting to admit the defendant's prior bad acts through cross-examination of Brashears.  The judge overruled the objection, reasoning that because Brashears had said she never saw a gun, the prosecutor "can impeach her." The next morning, defense counsel moved for a mistrial, specifically citing Peck and arguing that the prosecutor impermissibly impeached Brashears and the defendant with "statements that they had allegedly made without having the Maine trooper here to actually testify."  The judge denied the motion, reasoning that Peck did not apply because it involved "undisclosed information."  We need not decide whether the defendant adequately preserved his current claim with respect to Brashears's testimony because we conclude that the error was

asked Brashears a series of questions about statements she allegedly had made to Duff, none of which she recalled.[6] The prosecutor concluded this line of questioning by asking Brashears whether it was her testimony that "this report of Trooper Scott Duff . . . is not accurate and a made up report"

---

harmless even under the prejudicial error standard, which is more favorable to the defendant than the substantial risk of a miscarriage of justice standard. See Commonwealth v. Alphas, 430 Mass. 8, 23 (1999).

[6] Q.: "On that same day, Ms. Brashears, you indicated to Trooper Scott Duff that the defendant showed you his black pistol and that he was carrying it in his left jacket, do you remember that?"

A.: "No."

Q.: "Do you remember telling Trooper Scott Duff on February 9th of 2014 that he also had the bullets in his right pocket?"

A.: "I don't remember that, no."

Q.: "Do you remember telling Trooper Scott Duff on that day that the defendant had bought new guns because his father had taken back the possession of his old guns, do you remember that?"

A.: "No."

Q.: "In the four years that you've been with the defendant, your testimony here today again is that you've never seen a gun in his possession ever?"

A.: "Correct."

Q.: "Despite telling the trooper on February 9th 2014 not only that you saw a gun in his possession . . . but also that you knew he had guns prior, you don't remember that?"

A.: "No."

and that her conversation with the trooper "never happened." Brashears agreed with the prosecutor's characterization.

The cross-examination of Brashears "had the effect of informing the jury of the contents of out-of-court statements allegedly made by the [testifying witness] that were not admissible." Peck, 86 Mass. App. Ct. at 39-40. The statements did not qualify as prior inconsistent statements because the witness denied having made them, and no competent witness was available to prove them as extrinsic evidence. See Mass. G. Evid. § 613(a)(1)-(2) (2017). See also Peck, supra at 40. Once Brashears denied any recollection of her conversation with Duff, the prosecutor could have attempted to refresh Brashears's recollection with Duff's report. Peck, supra at 40 n.11. If that attempt had failed, and if the prosecutor had not been prepared to call Duff as a witness, she should have abandoned this line of questioning.

To the extent this claim of error was preserved, "we must determine whether 'the error did not influence the jury, or had but very slight effect.'" Id. at 40, quoting from Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). We are confident that the outcome of the trial would have been the same even without the improper cross-examination of Brashears. Unlike in Peck and Christian, the witness (Brashears) was not the defendant, and no statements allegedly attributed to the defendant were

erroneously introduced. The questions here did not directly involve the facts of the crime with which the defendant was charged. Rather, the statements attributed to Brashears involved the defendant's possession of guns and ammunition in Maine, either after his arrest in Massachusetts or at some unspecified point during the four years that he and Brashears had lived together. Given the discovery of two firearms near the defendant's truck at the time of his arrest, and his statements indicating his knowledge and possession of those guns, we can say with fair assurance that the discussion of his ownership of guns at other times in another State had little or no effect on the jury's verdict.

b. Cross-examination of the defendant. The defendant, who testified after Brashears, referred to Trooper Duff during direct examination. When defense counsel asked him whether he "ever had a gun," the defendant replied, "A couple of rifles, that's it. I got right rid of those. That's why Duff was up there. I told Duff come and get them." He denied owning any pistols. "[Duff] said, you got pistols down there? What would I buy a pistol for? We do a little deer hunting or moose hunting if you get a permit. I don't even really like doing that. You can't shoot nothing with a pistol."

On cross-examination, the prosecutor asked the defendant about "allegations that [he] showed a pistol" at a restaurant in

Maine about one month after his Massachusetts arrest, which Duff had been called to investigate. The defendant replied, "Allegations," and recounted his version of the incident and his conversation about it with Duff. The prosecutor then asked whether it was true "that Trooper Duff also knew of another time that [the defendant] displayed a pistol." The defendant denied any knowledge of a second incident, and the prosecutor moved on to another subject.

This line of questioning, to which the defendant did not contemporaneously object, was proper. Unlike Brashears, the defendant admitted that he had spoken with Duff. He was aware of the foundation for the prosecutor's cross-examination, and he was able to offer an explanation. The cross-examination thus did not have the effect of "smear[ing]" the defendant with insinuation and innuendo without permitting him a meaningful opportunity to challenge the extrajudicial statements. Christian, 430 Mass. at 563. Delrio, 22 Mass. App. Ct. at 721. The prosecutor's cross-examination of the defendant did not violate the principles discussed in Peck.

c. Cross-examination of defense expert. The defendant contends, for the first time on appeal, that the prosecutor's cross-examination of Brower, the defendant's expert forensic psychiatrist, by using the defendant's statements to a treating physician who was not available to testify, violated the

principles most recently enunciated in Peck.[7]  The defendant's reliance on Peck is misplaced, as the rules governing expert testimony permit the opposing party substantial leeway to confront the expert with materials on which the expert relied in formulating an opinion.

In Department of Youth Servs. v. A Juvenile, 398 Mass. 516 (1986), the Supreme Judicial Court "expanded the permissible basis of an expert opinion to include 'facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion.'"  Commonwealth v. Barbosa, 457 Mass. 773, 785 (2010), quoting from Department of Youth Servs., supra at 531. "If the facts or data are admissible and of the sort that experts in that specialty reasonably rely on in forming their opinions, then the expert may state that opinion without the facts or data being admitted in evidence."  Department of Youth Servs., supra at 532.

During direct examination, the party offering the expert opinion must take pains to avoid "informing the jury about the

---

[7] The defendant objected twice during the cross-examination of Brower.  The defendant first objected, successfully, to the admission of a physician's report, which was marked as an exhibit for identification purposes only.  The defendant also made one general objection, which was overruled, when the prosecutor first asked Brower if he recalled "reviewing some information that [the defendant] provided that doctor about the incident."  As we discern no error, whether the issue was preserved is immaterial.

facts or data [the expert] considered that were not in evidence but that would be admissible with the right witness or proper foundation." Barbosa, supra. See, e.g., Commonwealth v. Jaime, 433 Mass. 575, 577-578 (2001). On cross-examination, however, the opposing party is free to question the expert about the substance of the facts or data upon which the expert relied. Id. at 577. See Mass. G. Evid. § 703 note, at 244 (2017). "The thrust of the rule is to leave inquiry regarding the basis of expert testimony to cross-examination." Department of Youth Servs., supra (citation omitted).

The prosecutor's cross-examination of Brower adhered to these guidelines. The prosecutor established that one of the documents Brower had reviewed in forming his opinion was an evaluation prepared by Dr. Peter McCullen at the VA hospital a few weeks after the defendant's arrest. The prosecutor asked Brower, whose opinion was based in part on the assumption that the defendant was intoxicated at the time of his arrest, about statements in McCullen's report attributed to the defendant to the effect that he had been drinking alcohol very infrequently during the prior year.[8] The prosecutor also inquired about

---

[8] On direct examination, the defendant explained why he had minimized his drinking when he spoke with the doctor at the VA hospital: "You got to tell them guys that. . . . That's all they want to do. They make you an alcoholic or make you depressant. They can't say, yeah kid we messed up your back . . . and your leg."

statements the defendant had made to McCullen demonstrating the defendant's memory of details of the day of his arrest, including that he was stopped by the "Roxbury police" with a pistol that he had borrowed from a friend, that one of the guns was a .22 and the other had an eight-inch barrel, and that the fact that he had crossed State lines with firearms is what caused the problem.  Reminding Brower of his opinion that the defendant was so impaired on January 12 that he could not make voluntary statements, the prosecutor asked, "[W]hy would the defendant have a clear recollection of what happened on January 12th" three weeks later?

These questions were proper.  Indeed, a judge is generally "not permitted to exclude questions on cross-examination 'designed to elicit the underpinnings of the expert's opinion.'" Barbosa, 457 Mass. at 786, quoting from Department of Youth Servs., supra.  Such cross-examination may be curtailed in criminal cases only in limited circumstances.  "In determining whether to allow an expert to testify to the facts underlying an opinion, the court must inquire whether . . . the testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice.'"  Commonwealth v. Anestal, 463 Mass. 655, 669 (2012), quoting from United States v. Gillis, 773 F.2d 549, 554 (4th Cir. 1985).  See Mass. G. Evid. § 703 note, at 244 (2017).  The probative value of such

questioning is at its zenith where, as here, "the purpose of cross-examination is 'to shake the foundation of the defense experts' opinions rather than to focus on the defendant's prior criminality.'" Commonwealth v. Colleran, 452 Mass. 417, 425 (2008), quoting from Commonwealth v. Killelea, 370 Mass. 638, 650 (1976). See Anestal, supra at 670. We discern no error.

2. Voluntariness of defendant's statements and Miranda waiver. The defendant claims that his statements to the police officers during the course of his apprehension and arrest were inadmissible because his pre-Miranda statements, and the waiver of his Miranda rights, were not voluntary. We discern no error in the trial judge's determining beyond a reasonable doubt that the defendant's statements were voluntary and permitting the jury to consider them.[9]

---

[9] The defendant filed a motion to suppress prior to trial, challenging both the propriety of the removal of the defendant from the truck and the voluntariness of his statements and waiver. After a two-day evidentiary hearing, at which the arresting officers testified, the motion judge denied the motion, and the Supreme Judicial Court denied the defendant's application for leave to pursue an interlocutory appeal. The defendant retained Brower, his forensic psychiatrist expert, a few months before trial. A renewed motion to suppress, based on the defendant's proffer of Brower's opinion, was denied by a second judge without an evidentiary hearing. On appeal, the defendant does not challenge any of these pretrial determinations.

On the first day of trial, before a third judge (the trial judge), a voir dire was held regarding the voluntariness of the defendant's pre-Miranda statements, during which only one arresting officer, Santillana, testified. Defense counsel

a.  Voluntariness.  "Where a defendant makes statements to the police while 'not in custody, we focus solely on the question whether his statements were voluntary.'"  Commonwealth v. Molina, 467 Mass. 65, 75 (2014), quoting from Commonwealth v. Durand, 457 Mass. 574, 595 (2010).  In assessing voluntariness, "[t]he ultimate inquiry is 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.'"  Molina, supra at 75-76, quoting from Durand, supra at 595-596.  "[T]he Commonwealth . . . bears the burden of proving beyond a reasonable doubt that the [defendant's] statement was made voluntarily."  Commonwealth v. Tremblay, 460 Mass. 199, 206 (2011).  On appellate review, we accept the trial judge's findings of fact absent clear error and defer to her credibility determinations, but we independently determine "the correctness of the judge's application of constitutional principles to the facts as found."  Id. at 205.

The typical indicia of involuntariness, such as police intimidation, promises, or trickery, or the defendant's

initially asked to present Brower's testimony during voir dire, but then withdrew this request when the judge stated that she would allow Brower to testify at trial and would give the jury a "humane practice" instruction.  Accordingly, the judge's decision to admit the defendant's statements was based solely on Santillana's voir dire testimony, and our review is similarly limited.

vulnerability based on age, education, or intelligence, are not present here. See Molina, 467 Mass. at 76; Commonwealth v. Gonzalez, 59 Mass. App. Ct. 622, 627 (2003). The only indication of involuntariness was the defendant's somnolent state and initial incoherence when the officers first approached him, whether induced by drugs, alcohol, or fatigue. However, "[a]n otherwise voluntary act is not necessarily rendered involuntary simply because an individual has been drinking or using drugs." Commonwealth v. Shipps, 399 Mass. 820, 826 (1987). See Commonwealth v. Tremblay, 92 Mass. App. Ct. 295, 304 nn.10-11 (2017), and cases cited.

While the defendant was hunched over and mumbling when the officers first approached, Santillana testified that when the defendant said, "I'll shoot you all," he spoke "in a very clear voice" and "made sure and looked right at [Santillana] . . . when he said those words." Santillana did not observe any signs of alcohol or drug use. Moreover, once removed from the truck, the defendant showed no signs whatsoever of disorientation. See Commonwealth v. Pina, 430 Mass. 66, 71 (1999) (police observations of defendant's conduct prior to and after making statement relevant to voluntariness). The trial judge did not err in determining that the defendant was not so incapacitated or intoxicated "at the time he uttered the spontaneous, inculpatory statement as to preclude a finding that the

statement was 'the product of a rational intellect and a free will.'" Commonwealth v. Lanoue, 392 Mass. 583, 586 (1984), quoting from Blackburn v. Alabama, 361 U.S. 199, 208 (1960).

b. Miranda waiver. "Our conclusion on the issue of voluntariness does not resolve all issues raised in this case concerning the admissibility of the defendant's statements." Molina, 467 Mass. at 77. See Gonzalez, 59 Mass. App. Ct. at 627 ("Although these issues are separate, each is determined on the basis of the totality of the surrounding circumstances"). Nonetheless, the validity of the defendant's Miranda waiver need not detain us long. The voir dire testimony showed that, by the time the officers discovered the first firearm near the defendant's truck and read him the Miranda warnings, no signs of incapacity remained. "He was . . . talking directly to us, . . . making eye contact when he was asked questions directly[,] . . . speaking very candidly, very very lucid, very clear. Wasn't slurred . . . didn't appear to be drowsy or under the influence of anything." With deference to the trial judge's credibility determinations, we have no difficulty concluding that the Commonwealth proved beyond a reasonable doubt that the defendant made a knowing, intelligent, and voluntary waiver. Molina, supra at 78.

<u>Conclusion</u>.  The judgments are affirmed.  The appeal from the order denying the motion to stay execution of the sentence is dismissed as moot.[10]

<u>So ordered</u>.

---

[10] See note 1, <u>supra</u>.